## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIAM MANIACI | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 06 CV 01625 |
| | ) | |
| vs. | ) | Judge Kollar-Kotelly |
| | ) | |
| GEORGETOWN UNIVERSITY, et al. | ) | **Next Scheduled Event:** |
| | ) | September 28, 2007, 9:00 a.m. |
| Defendants. | ) | Status Hearing |

### DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), Defendants Georgetown University, David F. Morrell, Darryl K. Harrison, Erik Smulson, Todd Olson, and Officer George W. Taylor (collectively "Defendants") hereby move for judgment on the pleadings dismissing Count III of the Complaint with respect to all Defendants, and dismissing Counts I, II and IV of the Complaint with respect to Defendants Morrell, Harrison, Smulson and Olson. The grounds for this motion are set out in the accompanying Memorandum In Support. A form of order is attached.

Respectfully submitted,

___/s/ John J. Buckley, Jr._____

January 15, 2007

WILLIAMS & CONNOLLY LLP
John J. Buckley, Jr., D.C. Bar No. 925081
Malachi Jones, D.C. Bar No. 455555
Colleen F. Shanahan, D.C. Bar No. 496605
725 Twelfth Street, N.W.
Washington, D.C. 20005
Jbuckley@wc.com
(202) 434-5000
(202) 434-5058 (fax)

Attorneys for Defendants Georgetown University,
David F. Morrell, Darryl K. Harrison,
Erik Smulson, Todd Olson, and George W. Taylor.

*Of Counsel:*
Jane E. Genster
Vice President and General Counsel
Georgetown University
37th & O Streets, NW
Washington, DC 20057
(202) 687-6500
(202) 687-6527 (fax)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
**WILLIAM MANIACI**                     )
                                        )
        **Plaintiff,**           )         **Docket No. 06 CV 01625**
                                        )
        **vs.**                  )         **Judge Kollar-Kotelly**
                                        )
**GEORGETOWN UNIVERSITY, et al.**       )         <u>**Next Scheduled Event:**</u>
                                        )         **September 28, 2007, 9:00 a.m.**
        **Defendants.**          )         **Status Hearing**
_____)


## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>


January 15, 2007
        WILLIAMS & CONNOLLY LLP
        John J. Buckley, Jr., D.C. Bar No. 925081
        Malachi Jones, D.C. Bar No. 455555
        Colleen F. Shanahan, D.C. Bar No. 496605
        725 Twelfth Street, N.W.
        Washington, D.C. 20005
        Jbuckley@wc.com
        (202) 434-5000
        (202) 434-5058 (fax)

        *Of Counsel:*
        Jane E. Genster
        Vice President and General Counsel
        Georgetown University
        37th & O Streets, NW
        Washington, DC 20057
        (202) 687-6500
        (202) 687-6527 (fax)

        Attorneys for Defendants Georgetown University,
        David F. Morrell, Darryl K. Harrison,
        Erik Smulson, Todd Olson, and George W. Taylor.

# TABLE OF CONTENTS

Summary of Argument ..................................................................................................... 1

Factual Background ......................................................................................................... 2

Standard of Review .......................................................................................................... 4

Argument .......................................................................................................................... 5

I.    Count III Must be Dismissed with Respect to All Defendants. ........................... 5

    A.    Georgetown and the Administrator Defendants Cannot Be Held
        Vicariously Liable Under Section 1983 ................................................. 6

        1.    Georgetown University Cannot Be Held Vicariously Liable For
            The Conduct of Its Public Safety Officers. .................................. 6

        2.    The Defendant Administrators Cannot Be Held Vicariously
            Liable For Conduct of Georgetown's Public Safety Officers .................... 8

    B.    Plaintiff's Section 1983 Claim Must Be Dismissed With Respect to All
        Defendants Because Georgetown's Public Safety Officers Did Not Act
        Under Color of State Law. ................................................................... 10

        1.    The Complaint Fails to Adequately Allege That Georgetown's
            Public Safety Officers Exercised Their Powers of Arrest As
            Special Police Officers ............................................................... 11

II.   Counts I, II, and IV Must Be Dismissed with Respect to the Administrator
    Defendants. ......................................................................................................... 16

Conclusion ..................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

<u>Bennett v. United States Chess Fed'n</u>, Civ. No. 05-2225, 2006 U.S. Dist. LEXIS 45950 (D.D.C. July 7, 2006) ...................................................................................................11

<u>Coleman v. United States</u>, 295 F.2d 555 (D.C. Cir. 1961) ...........................................12

<u>Flagg Bros, Inc. v. Brooks</u>, 436 U.S. 149 (1978) .........................................................15

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982)....................................................................5

<u>Hobson v. Wilson</u>, 737 F.2d 1 (D.C. Cir. 1984) ............................................................5

<u>Iskander v. Village of Forest Park</u>, 690 F.2d 126 (7th Cir. 1982) ..............................6, 7

<u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271 (D.C. Cir. 1994) ...................4, 13

<u>Long v. Ansell</u>, 69 F.2d 386 (D.C.), aff'd 293 U.S. 76 (1934).................................12, 13

<u>Martin v. Malhoyt</u>, 830 F.2d 237 (D.C. Cir. 1987)........................................................5

<u>Moore v. United States</u>, 213 F.3d 705 (D.C. Cir. 2000)................................................4

<u>Peters v. National R.R. Passenger Corp.</u>, 966 F.2d 1483 (D.C. Cir. 1992) ....................5

<u>Powell v. Shopco Laurel Co.</u>, 678 F.2d 504 (4th Cir. 1982) .........................................7

<u>Pryor-El v. Kelly</u>, 892 F. Supp. 261 (D.D.C. 1995) ........................................4, 17, 18

<u>Rojas v. Alexander's Dept. Store</u>, 924 F.2d 406 (2d Cir. 1990)......................................7

<u>Sanders v. Sears, Roebuck & Co.</u>, 984 F.2d 972 (8th Cir. 1993) ......................7, 8, 9, 10

<u>Smith v. Nixon</u>, 807 F.2d 197 (D.C. Cir. 1986) ............................................................5

<u>Willacy v. Lewis</u>, 598 F. Supp. 346 (D.D.C. 1984)..................................................14, 15

<u>Williams v. United States</u>, 396 F.3d 412 (D.C. Cir. 2005)................................10, 11, 15

## STATE CASES

<u>Alston v. United States</u>, 518 A.2d 439 (D.C. 1986) ................................................15, 16

<u>Darob v. United States</u>, 623 A.2d 127 (D.C. 1993).....................................................14

King v. Kidd, 640 A.2d 656 (D.C. 1993) ...................................................................17

Moorehead v. District of Columbia, 747 A.2d 138 (D.C. 2000) ....................................12

O'Brien v. United States, 444 A.2d 946 (D.C. 1982) ...................................................14

Person v. Children's Hospital Nat'l Medical Ctr., 562 A.2d 648 (D.C. 1989)............................14

United States v. McDougald, 350 A.2d 375 (D.C. 1976) ........................................12, 16

Woodward & Lothrop v. Hillary, 598 A.2d 1142 (D.C. 1991) ................................7, 16

**STATUTES**

42 U.S.C. § 1983................................................................................... passim

D.C. Code § 5-129.02 (2006)......................................................................11

D.C. Code § 23-582(a) (2006) ....................................................................12

Federal Rule of Civil Procedure 12(b)(6) .........................................................1

Federal Rule of Civil Procedure 12(c) ..........................................................1, 4

**MISCELLANEOUS**

Restatement (Second) of Torts § 77 (1965) ....................................................14

Defendant Georgetown University ("Georgetown"), Defendants David F. Morrell, Darryl K. Harrison, Erik Smulson, and Todd Olson ("the Administrator Defendants"), and Defendant Officer George W. Taylor submit this memorandum in support of their motion for partial judgment on the pleadings, pursuant to Rule 12(b)(6) and Rule 12(c), Fed. R. Civ. P., dismissing Count III of the Plaintiff's Complaint with respect to all Defendants, and dismissing Counts I, II, and IV with respect to the Administrator Defendants.

## SUMMARY OF ARGUMENT

This lawsuit arises out of Plaintiff William Maniaci's attendance at a Palestinian Solidarity Conference held on the main campus of Georgetown University in February 2006. In essence, Plaintiff alleges that the actions of the University's public safety officers, in the course of removing him from a conference event and preventing his continued attendance, constituted an assault and battery (Count I) and false arrest (Count II) under the common law of the District of Columbia and deprived him of his federal constitutional right to free speech and assembly in violation of 42 U.S.C § 1983 (Count III). Relying on a theory of vicarious responsibility, Plaintiff seeks compensatory and punitive damages against Georgetown and four of its administrators (Defendants Morrell, Harrison, Smulson, and Olson) based on the alleged actions of the University's public safety officers. Relying on a theory of direct liability, Plaintiff seeks the same damages against Officer Taylor, a Georgetown public safety officer.

Count III must be dismissed with respect to Georgetown and the Administrator Defendants because they cannot be held liable under 42 U.S.C. § 1983 on a theory of vicarious responsibility. The law is settled that section 1983 liability cannot be premised merely on the employer-employee relationship, respondeat superior, or other theories of vicarious responsibility, and that this rule also precludes holding an employer's administrators vicariously

liable for the actions of their fellow employees.  Moreover, and wholly independently, Plaintiff's section 1983 claim must also be dismissed with respect to all Defendants because the Complaint fails to adequately allege that the conduct of Georgetown's public safety officers constituted state action, *i.e.,* that the officers exercised the power of arrest granted them as commissioned Special Police Officers under District of Columbia law.  Rather, the Complaint demonstrates only that Georgetown's safety officers exercised the University's right, as a private property owner, to prevent plaintiff's continued intrusion on its property after Plaintiff had been told to leave a conference event because of his disruptive behavior.

Finally, the four Administrator Defendants are entitled to dismissal of the remaining three state common-law counts (Counts I, II, and IV) because the Complaint fails adequately to allege a basis for holding them liable for the conduct of Georgetown's public safety officers.  Even assuming *arguendo* that those officers committed an assault and battery (Count I) and false arrest (Count II), their conduct cannot be imputed to the Administrator Defendants based on the allegations in the Complaint.  And since Count IV is not a cause of action at all but simply a plea for a particular form of relief (punitive damages), it must also be dismissed in light of the dismissal of the substantive counts (Count I, II and III).

## FACTUAL BACKGROUND

The Plaintiff is William C. Maniaci.  The six Defendants consist of Georgetown, four of its administrators, and one Georgetown public safety officer.  The Administrator Defendants are David Morrell, Vice President for University Safety; Todd Olson, Vice President for Student Affairs; Erik Smulson, Vice President for Communications; and Darryl Harrison, the Director of the Department of Public Safety.  The defendant public safety officer is George Taylor.

According to the Complaint, on February 18, 2006, Plaintiff entered the main campus of Georgetown University to attend the Palestinian Solidarity Conference as a registered participant.  Complaint ("Compl.") ¶ 2.  He was given a document entitled "Speech and Expression at Georgetown University" which contained a "Limitations" section that precluded "unlawful activity, actions that endanger or imminently threaten others, or activities that disrupt or obstruct the function of the University."  Id.  He proceeded to an auditorium, Gaston Hall, and was present for a discussion by four panelists of "divestment by Georgetown University of investments connected in some manner with Israel."  Id.   After the presentations, the panel took questions.  At some point Plaintiff asked the panelists: "If you approve or disapprove of the use of suicide bombers who murder innocent Israeli citizens as a means to accomplish your goals?" Id., ¶ 3.  The panelists allegedly "avoided answering the question and the faculty staff advisor pointed for the next question."  Id.  Plaintiff then said "Excuse me, but you did not answer the question."  Id.  Defendant Todd Olson, Vice President for Student Affairs, "wanted to move on," but Plaintiff "repeated his statement again."  Id.  Defendant Olson allegedly dismissed Plaintiff's question and then indicated that he wanted Georgetown's public safety officers to remove Plaintiff from the auditorium.  Id.

Two Georgetown safety officers (one of whom was allegedly Officer Taylor) removed Plaintiff from the auditorium and took him into the hallway.  According to the Complaint, although he "did not resist at all," Plaintiff was "thrown," "dragged" and "lifted" by the safety officers and sustained various injuries to his head and limbs.  Compl. ¶ 4.  An unidentified "University official approached him and told him to leave and walked with him out to the main entrance."  Id.

Plaintiff and two of his associates nevertheless proceeded next to the Inter-Cultural Center ("ICC") on the campus, where vendor tables had been set up for the conference, and attempted to enter the building.  In the foyer of the ICC building, Plaintiff was allegedly surrounded by public safety officers, including Officer Taylor, and was "pushed against a glass window."  Id., ¶ 6.  Plaintiff "asked if he was being arrested, to which they responded with a 'no.'"  Id.  Plaintiff then indicated that he was not feeling well and asked to use the restroom.  Defendant Morrell, the Vice President for University Safety, told Plaintiff that he was barred from the conference.  Id.  When Plaintiff continued to ask to go to the restroom, a public safety officer allowed him to use a bathroom in the building.  When he returned to the foyer of the ICC building, Plaintiff was approached by a D.C. Metropolitan Police Department officer who had been called by the University to escort Plaintiff from the campus.  Id.

**STANDARD OF REVIEW**

In considering a Rule 12(c) motion, the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  Moore v. United States, 213 F.3d 705, 713 n.7 (D.C. Cir. 2000).  However, the court "need not accept legal conclusions cast in the form of factual allegations."  Pryor-El v. Kelly, 892 F. Supp. 261, 270 (D.D.C. 1995) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) and granting motion to dismiss).  Moreover, in light of the fact that Plaintiff contends that Officer Taylor and the other public safety officers were state actors performing the public function by exercising their powers of arrest as Special Police Officers commissioned by the District of Columbia, a heightened pleading standard must be applied to

Plaintiff's Complaint.[1]  Martin v. Malhoyt, 830 F.2d 237, 257 (D.C. Cir. 1987) ("we 'subject damage actions against government officials to a heightened pleading standard'"), quoting Smith v. Nixon, 807 F.2d 197, 200 (D.C. Cir. 1986).  This means that a plaintiff is required "to come forward with 'nonconclusory allegations of evidence' . . . .  [P]laintiffs bringing suit against a public official must generally put forward, in their complaints and other supporting materials, greater factual specificity and 'particularity' than is usually required."  Martin v. Malhoyt, 830 F.2d at 257, quoting Hobson v. Wilson, 737 F.2d 1, 29 (D.C. Cir. 1984).  Judgment is appropriate if the moving party is "entitled to judgment as a matter of law."  Peters v. National R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992).

## ARGUMENT

### I.    Count III Must be Dismissed with Respect to All Defendants.

Count Three is based on 42 U.S.C. § 1983 and alleges a violation of Plaintiff's First Amendment rights.[2]  This claim is necessarily based on the theory that Georgetown's public safety officers exercised their powers of arrest as Special Police Officers commissioned by the District of Columbia and that their false arrest of Plaintiff constituted action under color of state law and violated Plaintiff's federally protected rights.  Compl. ¶¶ 9, 18.

This claim must be dismissed with regard to Georgetown and the Defendant Administrators for two independently sufficient reasons.  First, a defendant employer and its administrators cannot be held vicariously liable under section 1983, and therefore the actions of Georgetown's public safety officers cannot be imputed to Georgetown or the Administrator

---

[1]    As Defendants have alleged in their Answer, Defendant Taylor and the public safety officers are entitled to qualified immunity if they are held to be state actors.  See Answer at 6-7; Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[2]    Count Three also appears to allege a violation of Plaintiff's "freedom from arrest except on probable cause," which would be a Fourth Amendment violation.  Compl. ¶ 18.

Defendants. Second, the Complaint fails adequately to allege state action—a required element under section 1983—since it does not allege facts showing that Georgetown's public safety officers exercised the statutory power of arrest given to them as Special Police Officers under District of Columbia law. Instead, the officers' actions removing Plaintiff from the auditorium, and excluding him from the conference, were taken pursuant to Georgetown's right as private property owner to remove or bar unwanted intruders. Since the Complaint fails to show that Georgetown's safety officers used their powers of arrest as Special Police Officers, the required element of state action is lacking. For that additional reason, the Complaint must be dismissed as to Defendant Officer Taylor as well as Georgetown and the Administrator Defendants.

> **A.** **Georgetown and the Administrator Defendants Cannot Be Held Vicariously Liable Under Section 1983.**

The Complaint does not allege that Georgetown or the Administrator Defendants inflicted any injuries on Plaintiff. Rather, the Complaint alleges that the conduct of Georgetown's public safety officers "is implied by law" to the University and the Administrator Defendants. Compl. ¶¶ 13, 16, 19. These allegations are plainly insufficient because, as a matter of law, vicarious liability cannot serve as a basis for liability under section 1983.

> **1.** **Georgetown University Cannot Be Held Vicariously Liable For The Conduct of Its Public Safety Officers.**

Georgetown University cannot be liable for the conduct of its employees under 42 U.S.C. § 1983 "based merely on the employer-employee relationship." See Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982). It is well settled that, "just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." Id. (citation omitted) (department store could not be held vicariously liable for actions of its security guards acting pursuant to state statute).

See also Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993) (affirming dismissal because Sears "cannot be held liable under Section 1983 on a respondeat superior theory" for actions of employee security guard); Rojas v. Alexander's Dept. Store, 924 F.2d 406, 408-09 (2d Cir. 1990) ("[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees"); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982) (affirming judgment on the pleadings dismissing § 1983 claim against Shopco where liability for actions of employee special police officers was predicated on respondeat superior); Woodward & Lothrop v. Hillary, 598 A.2d 1142, 1144 n.2 (D.C. 1991) (citing case law holding that under § 1983 employer cannot be held vicariously liable for constitutional torts of an employee).

An exception to this rule has been recognized where the employer had a "constitutionally forbidden rule or procedure" that was the "moving force of the constitutional violation." Iskander, 690 F.2d at 128. The fact that the employee's conduct was unconstitutional in a particular case does not establish or support an inference that the employer's policy was unconstitutional. Thus, in Iskander, the U.S. Court of Appeals reasoned that "[e]ven assuming that plaintiff proved that her detention by the store detective was without probable cause and invaded her civil rights, that single act of unconstitutional conduct does not support the inference that the conduct was pursuant to an impermissible [store] policy." Id. at 128-129. Noting that the store's policy provided for detaining shoplifting suspects and calling the police, the Court found that this "entirely legitimate policy" could not form the basis of liability for the employer even if the employee acted unconstitutionally. Id. at 129.

Here, the Complaint does not allege that Georgetown had a constitutionally forbidden policy of making false arrests and that this official policy caused Georgetown's public security officers falsely to arrest Plaintiff. Specifically, there is no allegation that Georgetown's

official policy caused its public safety officers to effect a false arrest—the state action that necessarily forms the basis for Plaintiff's section 1983 claim. The Complaint expressly refers to Georgetown's "Speech and Expression" policy (Compl. ¶ 2) but does not allege that it is unconstitutional and that this official policy caused Georgetown's safety officers falsely to arrest Plaintiff and commit an assault and battery in the course of such false arrest. And as the Court of Appeals held in Iskander, a single instance of unconstitutional conduct (here, the alleged false arrest) does not create an inference that the employer's policy is unconstitutional and therefore does not create a basis for avoiding the rule against vicarious liability under section 1983. See also Sanders v. Sears Roebuck & Co., 984 F.2d at 975 (section 1983 complaint dismissed against employer where plaintiff "has not pled that Sears has a policy or custom of false arrests . . . ."). Therefore, the Complaint fails to state a claim for holding Georgetown vicariously liable for the alleged constitutional torts of its public safety officers.

### 2.    The Defendant Administrators Cannot Be Held Vicariously Liable For Conduct of Georgetown's Public Safety Officers.

The Complaint alleges that Administrator Defendants are vicariously liable for the conduct of Georgetown's public safety officers because the officers' conduct is "implied by law" to the Administrators. Compl. ¶¶ 13, 16, 19. The Administrators are entitled to dismissal of the complaint because even if the public safety officers' conduct were to constitute state action— which it does not—the theories of respondeat superior and vicarious liability do not result in imposition of liability under section 1983 for the Administrator Defendants because they are merely the fellow servants of the safety officers. Each of the Administrator Defendants is therefore entitled to dismissal of the Complaint.

a.    David Morrell. Defendant Morrell is Georgetown's Vice President for University Safety. The Complaint avers only that when Plaintiff was in the foyer of the ICC

building, Mr. Morrell "approached Mr. Maniaci and told him that he was being barred from the conference." Compl. ¶ 6. There is no allegation that Mr. Morrell directed that Plaintiff be arrested. Instead, the Complaint charges that Mr. Morrell is vicariously liable for the conduct of Georgetown's public safety officers because their conduct is "implied by law" to Mr. Morrell. Id., ¶ 19. As already demonstrated, there is no basis for vicarious liability under section 1983 in this case.

> b.    <u>Darryl Harrison</u>.  Defendant Harrison is the Director of

Georgetown's Department of Public Safety.  The Complaint does not allege any specific conduct by Mr. Harrison and does not allege that he instructed Georgetown's public safety officers to arrest Plaintiff.  The Complaint instead avers that Mr. Harrison is vicariously liable for the conduct of the public safety officers because their conduct is "implied by law" to him.  Compl. ¶ 19.   Again, there is no basis for such vicarious liability under section 1983.

> c.    <u>Erik Smulson</u>.  Defendant Smulson is the Assistant Vice President

for Communications.  The Complaint alleges that Mr. Smulson "was requested by bystanders to take action to stop the assault [of Plaintiff in Gaston Hall] but refused."  Compl. ¶ 4.  Again, there is no allegation that Mr. Smulson directed the pubic safety officers to arrest Plaintiff.  The Complaint's allegation that the conduct of Georgetown's public safety officers is "implied by law" to Mr. Smulson (<u>id.</u>, ¶ 19) is insufficient as a matter of law.

> d.    <u>Todd Olson</u>.  Mr. Olson is Vice President for Student Affairs.  The

Complaint alleges only that Mr. Olson "indicated that he wanted Georgetown University Police" to remove Plaintiff from Gaston Hall after Plaintiff kept repeating his question.  Compl. ¶ 3. There is no allegation that Mr. Olson directed that the public safety officers arrest Plaintiff.  The

Complaint's allegation that the conduct of the public safety officers is "implied by law" to Mr.

Olson (id., ¶ 19) is insufficient as a matter of law.

In sum, there is no allegation that the Defendant Administrators directed

Georgetown's public safety officers to arrest Plaintiff and no basis for vicarious liability under

section 1983.  Thus, as a matter of law, Plaintiff cannot impute liability to the Administrator

Defendants for the alleged actions of the public safety officers.

**B.      Plaintiff's Section 1983 Claim Must Be Dismissed With Respect to All Defendants Because Georgetown's Public Safety Officers Did Not Act Under Color of State Law.**

Section 1983 applies only where the person committing the constitutionally

tortious conduct was acting under color of state law.  It states in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  "The traditional definition of acting under color of state law

requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state

law and made possible only because the wrongdoer is clothed with the authority of state law.'"

Williams v. United States, 396 F.3d 412, 414 (D.C. Cir. 2005), quoting West v. Atkins, 487 U.S.

42, 49 (1988).  Even assuming that all of Plaintiff's factual allegations are true, the Complaint

fails to show that any of the Defendants acted under color of state law and that Georgetown's

public safety officers exercised their powers of arrest as Special Police Officers commissioned

by the District of Columbia when they removed Plaintiff from Georgetown's auditorium and

barred him from entry into the ICC building.  Therefore, judgment should be entered against

Plaintiff on Count III.  See Bennett v. United States Chess Fed'n, Civ. No. 05-2225, 2006 U.S. Dist. LEXIS 45950 (D.D.C. July 7, 2006) ("[D]efendants are private parties, not government or state actors, and, therefore, they cannot violate plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983.")

> **1.    The Complaint Fails to Adequately Allege That Georgetown's Public Safety Officers Exercised Their Powers of Arrest As Special Police Officers.**

Plaintiff's theory that the Defendants acted under color of state law necessarily rests on the propositions:  (1) that Georgetown's public safety officers were Special Police Officers ("SPO") commissioned by the District of Columbia; and (2) that Georgetown's public safety officers exercised their SPO powers of arrest and thus took action "made possible only because … [they were] clothed with the authority of state law."  Williams v. United States, 396 F.3d at 414.

The Complaint alleges that all of Georgetown's public safety officers are unarmed, commissioned Special Police Officers with powers of arrest vested through the District of Columbia Metropolitan Police.  Compl. ¶ 8.  The role and powers of an SPO are clearly defined under District of Columbia law.  "The Mayor, on application of any corporation or individual, or in his own discretion, may appoint special police officers . . . ."  D.C. Code § 5-129.02 (2006).  As the District of Columbia Court of Appeals has stated, a Special Police Officers is under the charge of the private corporation on whose behalf the SPO is appointed, and not under the charge of the Metropolitan Police Department or the D.C. Government:

> [T]he statute [] explicitly states that a special police officer is "under the charge of" the corporation or individual on whose behalf the SPO is appointed.  There is no indication, either in this case or in general, that the Chief of Police exercises any control whatever over the day-to-day activities of special police officers . . . .

Moorehead v. District of Columbia, 747 A.2d 138, 144 (D.C. 2000).

A private security guard is not automatically transformed into a state actor simply by virtue of his status as a commissioned Special Police Officer. See United States v. McDougald, 350 A.2d 375, 378 (D.C. 1976) ("The District of Columbia's mere licensing of security guards to work for [a company] does not so implicate the District in the actions of those security guards so as to make all their actions governmental."). The critical and only factor that distinguishes Special Police Officers from private security guards is the authority to arrest an individual without a warrant, upon probable cause. Id. at 144, n.8. See D.C. Code § 23-582(a) (2006) ("A special policeman shall have the same powers as a law enforcement officer to arrest without warrant"). Accordingly, a Special Police Officer is a state actor for the purposes of § 1983 *only* when the officer exercises the power of arrest. This is because "the power of arrest . . . is the sole factor which distinguishes the holder of a special police commission from a private citizen." United States v. McDougald, 350 A.2d at 378  (emphasis added).

The term arrest "has a well-defined meaning . . . . 'An arrest is the seizing of a person and detaining him in the custody of the law.'" Coleman v. United States, 295 F.2d 555, 563-64 (D.C. Cir. 1961) (quoting Long v. Ansell, 69 F.2d 386, 389 (D.C.), aff'd 293 U.S. 76 (1934)). An arrest is an action taken "in a criminal proceeding." Long v. Ansell, 69 F.2d at 389.

Applying this standard, it is apparent that the Complaint fails to allege facts showing that Georgetown's public safety officers exercised their SPO powers by arresting Plaintiff. Specifically, there is no allegation that the public safety officers announced to Plaintiff or anyone else that Plaintiff was under arrest. Furthermore, there is no allegation that the public safety officers charged Plaintiff with criminal conduct, advised him of his Miranda rights, used handcuffs on him, searched him, took him into the custody of the law, or initiated a criminal

proceeding. In sum, there is no factual allegation demonstrating that Georgetown's public safety officers arrested Plaintiff by detaining him in the custody of the law in a criminal proceeding.

Instead, the Complaint simply alleges that the public safety officers forcibly removed Plaintiff from the auditorium (Gaston Hall) and left him free in the hallway—conduct that could not have taken more than approximately one or two minutes. Following his removal from the auditorium, Plaintiff was not detained by the public safety officers but instead walked away on his own. Compl. ¶ 5. Far from being detained in the custody of the law, Plaintiff freely walked to the main gate of the campus and then to another building on campus, the Inter-Cultural Center. Compl. ¶¶ 5-6. He went to the ICC building despite—according to Plaintiff's own Complaint—having been told by a University official to leave the campus. Compl. ¶ 4. With regard to the incident in the ICC foyer, Plaintiff alleges that a number of Georgetown public safety officers blocked his entry into the ICC, but specifically told him that he was not being arrested. Compl. ¶ 6. Indeed, the Complaint concedes that Plaintiff was then escorted off of the campus by a MPD officer and was free to go. Id. ¶¶ 6-7. He was never detained in the custody of the law and never charged with a criminal offense.[3]

Accepting the Complaint's allegations as true, at most the public safety officers removed Plaintiff from private property after his behavior in Gaston Hall during the panelists' question and answer session caused Defendant Olson to instruct Plaintiff to leave.[4] The removal

---

[3]     In the first nine paragraphs of Plaintiff's Complaint, which contain Plaintiff's factual allegations, there is no allegation that Plaintiff was arrested. Only in the portion of the Complaint containing the various counts or causes of action is there the legal conclusion that Plaintiff was arrested. Compl. ¶¶ 15, 18(c ). In determining the sufficiency of a complaint, however, legal conclusions are to be disregarded. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

[4]     The Complaint alleges that Plaintiff was subsequently asked twice to leave Georgetown property. First, "[a] University official approached [Plaintiff] and told him to leave and walked with him out to the main entrance." Compl. ¶ 5. Then, after Plaintiff nonetheless went to the

of a person from private property is not an act exclusively associated with the state but instead represents the exercise of a traditional "self-help" measure by which private persons may protect their property. See Willacy v. Lewis, 598 F. Supp. 346, 349 (D.D.C. 1984) (merchant's detention of suspected shoplifter "not an action exclusively associated with the state" and therefore not state action). As a matter of law, a property owner has a right to use reasonable force to "prevent or terminate another's intrusion" onto private property. RESTATEMENT (SECOND) OF TORTS § 77 (1965). The District of Columbia has expressly adopted section 77 of the Restatement. See Person v. Children's Hospital Nat'l Medical Ctr., 562 A.2d 648, 650 (D.C. 1989) ("[A] possessor of land has a qualified privilege to use force to remove someone from the property.") Once Defendant Olson, Vice President for Student Affairs, instructed Plaintiff to leave the auditorium, Plaintiff no longer had any right to remain. "[T]he mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain on the premises." O'Brien v. United States, 444 A.2d 946, 948 (D.C. 1982). Accord, Darob v. United States, 623 A.2d 127, 135 (D.C. 1993). Moreover, Georgetown had the right to use reasonable force to remove any person, including Plaintiff, who no longer had any right to remain on the premises. See RESTATEMENT (SECOND) OF TORTS § 77; Person, 562 A.2d at 650.

The conduct of Georgetown's public safety officers in removing Plaintiff from Gaston Hall and in barring his entry into the ICC building is consistent with a private property owner's exercise of the right of self-help to protect its property and exclude persons who have become unwanted intruders. It was conduct that could have been performed by private security guards who were not commissioned SPOs but who were simply effectuating a property owner's right to remove intruders from its property. The Complaint thus alleges that in Gaston Hall,

_____

ICC building and entered the foyer, he was again told "he was being barred from the conference" and was escorted off campus. Compl. ¶ 6.

Defendant Olson had called for Plaintiff's removal after Plaintiff had twice repeated his statement that his question about suicide bombing had not been answered, notwithstanding two indications (one from a faculty staff advisor and the other from Olson) that it was time for the next question from another person.  Compl. ¶ 3.  Furthermore, outside of Gaston Hall, "[a] University official approached … [plaintiff] and told him to leave and walked with him out to the main gate."  Compl. ¶ 6.

        The present motion does not, however, require the Court to determine whether Georgetown's public safety officers used reasonable or excessive force or even whether Plaintiff had a right to remain on Georgetown's property.  Rather, because the Plaintiff's state action claim necessarily rests on the theory that he was arrested by Georgetown public safety officers, the only issue is whether the Complaint sufficiently alleges facts showing that the public safety officers exercised their SPO powers of arrest and thus took actions "made possible <u>only because</u> [they were] … clothed with the authority of state law."  <u>Williams v. United States</u>, 396 F.3d at 414 (emphasis added).  <u>See</u> <u>Willacy v. Lewis</u>, 598 F. Supp. at 348 (to constitute state action, person must "perform 'public functions,' that is, those functions 'traditionally exclusively reserved to the State.''), quoting <u>Flagg Bros, Inc. v. Brooks</u>, 436 U.S. 149, 157 (1978).  Plainly, it does not.

        <u>Alston v. United States</u>, 518 A.2d 439, 443 (D.C. 1986), is instructive.  There, unlike the present case, the department store security guards, who were SPOs, arrested a suspected shoplifter, informed her of her rights, detained her in a security office, searched her person and possessions.  <u>Id.</u> at 440.  The court held that in this situation the SPO was a state actor because the conduct "involve[d] the arrest or a suspect and actions related thereto-the broad [special police officer] powers which distinguishes the [special police officer] from a private

citizen." Id. at 443.  Likewise, in Woodward & Lothrop v. Hillary, 598 A.2d 1142, 1146 (D.C.

1991)—again, unlike the present case—the department store security guards, who were SPOs,

detained a shopper, handcuffed him, searched him, seized $200, and kept him in a security office

until MPD officers arrived to transport him to the police station.  Id. at 1143.  The court held the

security guards had acted under color of law only because they specifically exercised the powers

they possessed by virtue of being special police officers.  Id. at 1146.

By contrast, United States v. McDougald, 350 A.2d 375, 378 (D.C. 1976), a

security guard, who was an SPO, told a witness not to speak with defense counsel.  The court

held he was acting merely as a private security guard and not a state actor because, in instructing

the witness, the guard "was not performing a public function authorized by his commission as a

special policeman."  Id.

In sum, putting aside whether the force used was reasonable vel non, the alleged

actions of Georgetown's public safety officers are consistent with a private property owner's

exercise of traditional self-help measures.  The Complaint fails to allege facts demonstrating that

these officers did not act simply as private individuals but instead exercised the powers of arrest

granted to them by their special commissions as SPOs.  Therefore, the Complaint does not

adequately allege that Georgetown's public safety officers were state actors for the purposes of

section 1983, and Plaintiff's section 1983 claim must be dismissed.

## II.    Counts I, II, and IV Must Be Dismissed with Respect to the Administrator Defendants.

Counts I (assault and battery) and Count II (false arrest) seek to hold the

Administrator Defendants vicariously liable for the allegedly wrongful conduct of Georgetown's

public safety officers.  See Compl. ¶ 13 (actions of Georgetown's public safety officers are

"implied by law" to Administrator Defendants); ¶ 16 (Count II, Administrator Defendants "are

vicariously liable" for actions of Georgetown's public safety officers). These defendants are not, however, the employers of these officers but only their fellow servants, and the Complaint fails to allege facts showing that the officers' conduct should be imputed to them. See King v. Kidd, 640 A.2d 656, 666 (D.C. 1993) (supervisory employee cannot be held vicariously liable for acts of subordinates; plaintiff must show that supervisor was personally liable) (citing Robertson v. Sichel, 127 U.S. 507 (1888)).

       a.    David Morrell. Defendant Morrell, Vice President for University Safety, allegedly "approached Mr. Maniaci and told him that he was being barred from the conference." Compl. ¶ 6. The Complaint alleges no physical injury to Plaintiff as the result of this statement and does not allege that Mr. Morrell directed that Plaintiff be arrested. Id. The allegation that the public safety officers were under his "direction and control" is a legal conclusion that is unsupported by any factual allegations and must thus be disregarded. See Pryor-El, 892 F.Supp. at 270. Thus, the Complaint states no claim against Defendant Morrell and there is no basis for vicarious liability.

       b.    Darryl Harrison. Defendant Harrison, Director of the Department of Public Safety, is not specifically alleged to have done anything. There is no allegation that he instructed the public safety officers to arrest Plaintiff, assault him, or physically touch him in any respect. The conclusory allegation that the officers were under his "control and direction" is not a substitute for minimally sufficient factual allegations and is not a sufficient basis for holding him vicariously liable.

       c.    Erik Smulson. Defendant Smulson, Assistant Vice President for Communications, was in Gaston Hall and "was requested by bystanders to take action to stop the assault [on plaintiff] but refused." Compl. ¶ 4. The Complaint fails to allege any injury to

Plaintiff as a result of Smulson's purported failure to act, and fails to plead any facts that would provide a basis for imposing vicarious liability on him.

        d.    <u>Todd Olson</u>.  Defendant Olson, Vice President for Student Affairs, allegedly "dismissed" Plaintiff's repeated questions and "then indicated that he wanted Georgetown University Police . . . to remove the Plaintiff."  <u>Id.</u>  The Complaint does not allege that Defendant Olson directed that Plaintiff be arrested, assaulted, or injured.  Therefore, there is no basis for imposing liability on Defendant Olson and the Complaint alleges no facts that would support the imposition of vicarious liability on Mr. Olson.

        Count IV is merely a plea for punitive damages and not a cause of action.  Since Counts I, II and III of the Complaint must be dismissed in their entirety as to the Administrator Defendants, Count IV must be dismissed as well.

<b>CONCLUSION</b>

        For the reasons stated, the Court should grant judgment on the pleadings dismissing Count III as to Defendant Georgetown, the Administrator Defendants, and Defendant Officer Taylor, and dismissing Counts I, II, and IV as to the Administrator Defendants.

18

Respectfully submitted,


    /s/ John J. Buckley, Jr.

January 15, 2007

WILLIAMS & CONNOLLY LLP
John J. Buckley, Jr., D.C. Bar No. 925081
Malachi Jones, D.C. Bar No. 455555
Colleen F. Shanahan, D.C. Bar No. 496605
725 Twelfth Street, N.W.
Washington, D.C. 20005
Jbuckley@wc.com
(202) 434-5000
(202) 434-5058 (fax)

*Of Counsel:*
Jane E. Genster
Vice President and General Counsel
Georgetown University
37th & O Streets, NW
Washington, DC 20057
(202) 687-6500
(202) 687-6527 (fax)

Attorneys for Defendants Georgetown University,
David F. Morrell, Darryl K. Harrison,
Erik Smulson, Todd Olson, and George W. Taylor.

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed with the Court on the 15th day of January, 2007, and that service was made via ECF and by First Class Mail to:

Thomas Fortune Fay, Esq.
601 Pennsylvania Avenue, NW
#900 – South Building
Washington, D.C. 20004


     /s/ John J. Buckley, Jr.
John J. Buckley, Jr.
Counsel for Defendants