IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIAM MANIACI | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 06 CV 01625 |
| | ) | |
| vs. | ) | Judge Kollar-Kotelly |
| | ) | |
| GEORGETOWN UNIVERSITY, et al. | ) | **Next Scheduled Event:** |
| | ) | September 28, 2007, 9:00 a.m. |
| Defendants. | ) | Status Hearing |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

February 26, 2007

John J. Buckley, Jr., D.C. Bar No. 925081
Malachi Jones, D.C. Bar No. 455555
Colleen F. Shanahan, D.C. Bar No. 496605
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
jbuckley@wc.com
(202) 434-5051
(202) 434-5058 (fax)

*Of Counsel:*
Jane E. Genster
Vice President and General Counsel
Georgetown University
37th & O Streets, NW
Washington, DC 20057
(202) 687-6500
(202) 687-6527 (fax)

Attorneys for Defendants Georgetown University,
David F. Morrell, Darryl K. Harrison,
Erik Smulson, Todd Olson, and George W. Taylor

**TABLE OF CONTENTS**

Introduction ................................................................................................................................. 1

I.   Count III Must be Dismissed As to Georgetown University and the
     Administrator Defendants Because Vicarious Liability is Not a Valid Basis for
     Liability Under 42 U.S.C. § 1983. .................................................................................. 3

     A.   Count III Fails To State a Valid Claim Against Defendants
          Georgetown University and Todd Olson. ............................................................. 4

     B.   Count III Fails To State a Valid Claim Against The Other
          Administrator Defendants. .................................................................................... 8

II.  Count III Must be Dismissed Because Georgetown's Public Safety Officers
     Did Not Act Under Color of State Law. ....................................................................... 10

III. Counts I, II, and IV Must Be Dismissed With Respect to the Administrator
     Defendants Because Vicarious Liability is Not A Proper Basis for Liability. ................. 13

Conclusion .............................................................................................................................. 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997) ............................... 5

Bennett v. United States Chess Fed'n, Civ. No. 05-2225, 2006 U.S. Dist. LEXIS 45950 (D.D.C. July 7, 2006) ............................................................................................. 10

Bowman v. District of Columbia, No. 05-CV-01933, 2006 U.S. Dist. LEXIS 53467 (D.D.C. August 2, 2006) ............................................................................................. 2

Coleman v. United States, 295 F.2d 555 (D.C. Cir. 1961) ............................................................. 11

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) ................................. 2

Haynesworth v. Miller, 820 F.2d 1245 (D.C. Cir. 1987) ............................................................ 9, 13

Henthorn v. Department of Navy, 29 F.3d 682 (D.C. Cir. 1994) ........................................... 2, 4, 6

International Action Center v. United States, 365 F.3d 20 (D.C. Cir. 2004) ................................. 9

Klayman v. Judicial Watch, Inc., No. 06-CV-670, 2007 U.S. Dist. LEXIS 3197 (D.D.C. January 17, 2007) ............................................................................................. 2

Martin v. Malhoyt, 830 F.2d 237 (D.C. Cir. 1986) ......................................................................... 2

McClelland v. Facteau, 610 F.2d 693 (10th Cir. 1979) ................................................. 8, 9, 13, 14

Monell v. Dep't of Social Services, 436 U.S. 658 (1978) ............................................................ 4, 5

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) ................................................................... 5, 7

Pryor-El v. Kelly, 892 F. Supp. 261 (D.D.C. 1995) ......................................................................... 2

Robinson v. District of Columbia, 403 F. Supp. 2d 39 (D.D.C. 2005) ........................................... 9

Rojas v. Alexander's Department Store, Inc., 924 F.2d 406 (2d Cir. 1990) ................................... 8

### STATE CASES

Castellon v. United States, 864 A.2d 141 (D.C. 2004) ................................................................. 11

Gabrou v. May Department Stores, 462 A.2d 1102 (D.C. 1983) ................................................. 12

King v. Kidd, 640 A.2d 656 (D.C. 1993) ...................................................................................... 13

Long v. Ansell, 69 F.2d 386 (D.C.), aff'd 293 U.S. 76 (1934) ....................................................... 11

In re M.E.B., 638 A.2d 1123 (D.C. 1993) ...................................................................................... 11

United States v. McDougald, 350 A.2d 375 (D.C. 1976) ............................................................... 10

Woodward & Lothrop v. Hillary, 598 A.2d 1142 (D.C. 1991) ....................................................... 12

**STATUTES**

42 U.S.C. § 1983 .......................................................................................................................... 2, 3

D.C. Code § 29-301.24 (2006) .......................................................................................................... 7

Federal Rule of Civil Procedure 12(b)(6)  ............................................................................... 1, 2, 6

Federal Rule of Civil Procedure 12(c)  ......................................................................................... 1, 2

Defendant Georgetown University, the Administrator Defendants (Defendants David F. Morrell, Darryl K. Harrison, Erik Smulson, and Todd Olson), and Defendant Officer George W. Taylor submit this Reply Memorandum in support of their motion, pursuant to Rule 12(b)(6) and Rule 12(c), Fed. R. Civ. P., for partial judgment on the pleadings (1) dismissing Count III of Plaintiff William Maniaci's Complaint with respect to all Defendants, and (2) dismissing Counts I, II, and IV with respect to the Administrator Defendants. This Reply Memorandum responds to Plaintiff's Memorandum of Points and Authorities In Opposition to Defendants' Motion for Partial Judgment On the Pleadings [Doc. No. 21] ("Opposition").

**INTRODUCTION**

After Plaintiff took the depositions of all of the named defendants, and after Defendants filed the present Motion, Plaintiff moved for a voluntary dismissal of Defendants Smulson and Taylor on a without-prejudice basis, admitting that his lawsuit against them "was in error." See Plaintiff's Motion to Amend Complaint, ¶ 1 [Doc. No. 18]. Defendants have requested that their dismissal be with prejudice. See Defendants' Opposition to Motion to Amend [Doc. No. 19]. Defendants Smulson and Taylor further request that the Court consider the merits of the present Motion in determining whether their dismissal should be with prejudice.

Plaintiff has also sought leave to file a proposed Amended Complaint. For present purposes, the only relevance of the proposed Amended Complaint is that it drops Defendants Smulson and Taylor as defendants and makes a new allegation with regard to Defendant Morrell. See Proposed Amended Complaint, ¶ 4. The proposed Amended Complaint, however, has no material effect on Defendants' Motion. See discussion at Section I.B., infra. Defendants' Motion is thus ripe for decision even in light of the proposed Amended Complaint.

1

Defendants have moved for partial judgment on the pleadings.  All that is properly before the Court at this time, therefore, is whether the allegations of the Complaint, taken as true, are sufficient as a matter of law.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice") (emphasis added).  Moreover, since Plaintiff alleges government action under 42 U.S.C. § 1983, conclusory allegations are not sufficient.  See Martin v. Malhoyt, 830 F.2d 237, 257 (D.C. Cir. 1986).  See also Pryor-El v. Kelly, 892 F. Supp. 261, 270 (D.D.C. 1995) (the court "need not accept legal conclusions cast in the form of factual allegations").  In addition, factual assertions contained in Plaintiff's Opposition, but not contained in Plaintiff's Complaint, are to be disregarded.  See Klayman v. Judicial Watch, Inc., No. 06-CV-670, 2007 U.S. Dist. LEXIS 3197, *18 (D.D.C. January 17, 2007) (Kollar-Kotelly, J.) ("Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint") (citing Henthorn v. Department of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994)).  A party may not defeat a Rule 12(b)(6) motion to dismiss, or a Rule 12(c) motion for judgment on the pleadings, by making new factual allegations in his responsive pleading.  See Bowman v. District of Columbia, No. 05-CV-01933, 2006 U.S. Dist. LEXIS 53467, *12-13 (D.D.C. August 2, 2006) (dismissing complaint where opposition brief, but not complaint, alleged a violation of federal rights).

Plaintiff's Opposition makes clear that Defendants' Motion should be granted. First, Plaintiff does not dispute that vicarious liability is not a valid basis for liability under 42 U.S.C. § 1983.  Therefore, Count III, which alleges a section 1983 claim against all Defendants based solely on the principle of vicarious liability, must be dismissed in its entirety.  Second,

Plaintiff does not dispute that a section 1983 claim must allege state action and that Plaintiff's sole theory of state action is that Georgetown's public safety officers allegedly exercised their power of arrest as commissioned special police officers ("SPOs") and arrested Plaintiff without probable cause.  Count III must again be dismissed, however, because the Complaint fails to allege facts establishing an arrest.  To the contrary, it alleges facts demonstrating that Plaintiff was not arrested and, consequently, that there is no state action.  Finally, Plaintiff does not dispute that vicarious liability is not a valid basis for holding the Administrator Defendants liable under Counts I (assault and battery) and II (false arrest).  Since this is the sole basis alleged by Plaintiff for holding the Administrator Defendants liable, these counts must be dismissed as well.  Finally, Count IV, which is merely a prayer for punitive damages, must be dismissed in light of the dismissal of the substantive counts.

**I.     Count III Must be Dismissed As to Georgetown University and the Administrator Defendants Because Vicarious Liability is Not a Valid Basis for Liability Under 42 U.S.C. § 1983.**

All of the cases cited in Defendants' Motion and Plaintiff's Opposition stand for the same legal principle: vicarious liability is not a valid basis for liability under 42 U.S.C. § 1983.  Count III of the Complaint expressly purports, however, to assert a claim against Georgetown University and the Administrator Defendants solely on the basis of vicarious liability.  See Compl. ¶ 19 ("conduct . . . which is implied by law to the Defendants, Georgetown University, David F. Morrell, Darryl K. Harrison, Eric Smulson and Todd Olson").  See also Compl. ¶ 16 ("vicariously liable").

Faced with the settled case law rejecting vicarious liability, Plaintiff's Opposition attempts to change his theory, from a claim of vicarious liability to a claim of direct liability, by making new legal and factual assertions that are not contained in, and indeed, contradict, his Complaint.  Specifically, Plaintiff argues that Defendant Olson, a Vice President for Student

3

Affairs, can be held directly liable (rather than vicariously liable) because he (1) was allegedly a "Vice President of the corporation," was "in charge of the [Palestinian Solidarity Conference] proceedings," was vested with final policymaking authority on behalf of Georgetown University, and (2) supposedly created a new and unlawful "policy" of having Georgetown's public safety officers make false arrests. See Opposition at pp. 7-8. Based on this new assertion that Defendant Olson had policymaking authority, and exercised it to establish a wrongful policy, Plaintiff seeks to hold both Georgetown and Olson directly liable.

Moreover, Plaintiff's Opposition asserts that Defendants Morrell (Vice President for Campus Safety) and Harrison (Director of Public Safety) were supervisors who were "present on the scene" and had "supervisory power over Georgetown University Police." Opposition at p. 8, notes 2 and 3, and p. 15. Again, Plaintiff seeks to hold these Defendants directly liable on the basis of a new theory that they failed adequately to supervise Georgetown's public safety officers and therefore caused Plaintiff's alleged false arrest. See Opposition at pp. 8, 14-15.

Neither the original Complaint nor the proposed Amended Complaint—which was filed after Plaintiffs took the depositions of all named defendants and after Defendants filed the present Motion —contains any such allegations or theories of direct liability. These new claims therefore cannot be properly considered by this Court. See Henthorn v. Department of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994). But even if these new assertions were to be considered, Plaintiff has still failed to assert a valid claim, and Count III must be dismissed.

> **A.   Count III Fails To State a Valid Claim Against Defendants Georgetown University and Todd Olson.**

Plaintiff does not deny that vicarious liability is not a valid basis for asserting a claim against either a supervisor or a municipality under section 1983. Monell v. Dep't of Social Services, 436 U.S. 658 (1978) holds that, while municipalities are not automatically immune

4

from suit under section 1983, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691.  Nor does Plaintiff deny that his original Complaint, and even his proposed Amended Complaint, are predicated solely on a theory of vicarious liability.

In his Opposition, Plaintiff instead invokes—for the first time—the principle that municipalities can be held liable when a government official—who is the government's authorized final policymaker—establishes a government policy that wrongfully injures the plaintiff.  See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).  In Pembaur the Court extended Monell to find that a municipality can be held liable based on a policy made by "that government's authorized decision makers." Id. at 481.  To establish a municipality's liability under Pembaur's policymaking rationale, "[t]he official must also be responsible for establishing final government policy respecting such activity . . . ." Id. at 482-3.  The requirement of a "'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-404 (1997) (applying Pembaur but reversing decision finding municipality liable for excessive force of officer based on sheriff's inadequate screening).

Pembaur's "final policymaker" theory is irrelevant to the present case, however, for several independently dispositive reasons. First, the Complaint does not allege that a wrongful Georgetown University policy caused Plaintiff's alleged injuries.  To the contrary, the Complaint alleges that Plaintiff was removed from Georgetown's premises in violation of University policy.  Plaintiff thus alleges that his conduct was subject to Georgetown's "Speech and Expression" policy, which bans "any activity that disrupts or obstructs the functions of the University or imminently threatens such disruption or obstruction" and that his removal was

5

inappropriate because Plaintiff did not violate that policy.  See Compl. ¶ 3, 4, 11; Exhibit A to Compl.  The Complaint does not allege that Georgetown's policy itself violated Plaintiff's rights or caused Plaintiff's alleged arrest.  Instead, it implicitly (if not explicitly) alleges that Administrator Olson departed from Georgetown's policy in asking that he be removed from an auditorium.  Because Plaintiff's new "policymaking" theory contradicts his own Complaint, it may not be considered.  See Henthorn, 29 F.3d at 688 ("factual allegations in briefs or memoranda of law . . . may never be considered when deciding a 12(b)(6) motion, and most certainly may not be considered when the facts they contain contradict those alleged in the complaint.") (internal citation omitted).

Further contradicting his own Complaint, Plaintiff's Opposition attempts to cast Defendant Todd Olson as a final policymaker who had authority to override Georgetown's Speech and Expression policy and make new policy for the University.  But there are no allegations in the Complaint (or even the proposed Amended Complaint) to support this policymaking liability theory.  Plaintiff asserts that Defendant Olson is "by definition and law a policymaking person in the corporation" (Opposition at p. 8), but the Complaint does not allege that Olson had policymaking authority, much less final policymaking authority, as would be required by Pembaur.  In addition, the assertion in Plaintiff's Opposition that Olson "is Vice President of the corporation" and was "in charge of the conference proceedings" (Opposition at p. 8) are not supported by the Complaint, which states only that Olson's title was "Vice President for Student Affairs."  Compl. ¶ 3.  It does not allege that Olson was a vice president of the corporation or that he had final policymaking authority for the University with regard to the conference, the University's speech and expression policy, or its policy regarding arresting persons who engage in disruptive behavior.  Moreover, Plaintiff's citation of the statutory

6

provision allowing non-profit corporations to appoint officers (D.C. Code § 29-301.24 (2006)) is no substitute for an allegation in the Complaint that Olson was an officer of the corporation and had final policymaking authority.  <u>Pembaur</u> is clear that liability attaches only when the individual supervisor has final policymaking authority. <u>See Pembaur</u>, 475 U.S. at 483.  The example used by Justice Brennan in <u>Pembaur</u> is helpful:  a sheriff may have authority to hire and fire employees, without being the policymaker with regard to employment issues because a municipal board may set municipal employment policy.  <u>Id.</u> at 484, n. 12.  In such a situation, a sheriff's actions could not give rise to municipal liability because the sheriff is simply an employee and not a policymaker.  <u>Id.</u>

The Complaint does not contain any allegation that differentiates Olson from Justice Brennan's example of the sheriff in <u>Pembaur</u>.  There is no allegation that Olson had final policymaking authority and no allegation that Olson's alleged conduct was anything more than that of an employee.  Thus, as a matter of law, the Complaint fails to plead any basis for Olson's or Georgetown University's liability.

Finally, there is no allegation in the Complaint that Olson made any policy that resulted in the arrest of Plaintiff.  Plaintiff expressly concedes that "it is correct that a single instance of misconduct does not establish a policy. . . ."  Opposition at p. 6.  Asking that a person be removed from an auditorium because his conduct is deemed to be disruptive hardly qualifies as establishing "a policy."  And what Plaintiff complains of, of course, is his "false arrest," yet the Complaint fails to allege that Olson directed that Plaintiff be arrested or established any policy regarding arrest.  The Complaint alleges only that Olson asked the Plaintiff be removed from the auditorium, not that he be arrested (much less arrested without probable cause).  <u>See</u> Compl. ¶ 3.

In <u>Rojas v. Alexander's Department Store, Inc</u>., 924 F.2d 406 (2d Cir. 1990), the Second Circuit addressed a similar contention that a department store could be held liable under section 1983 because its security guard, who was a commissioned special police officer, arrested plaintiff without probable cause. The Court held that the store could not be held vicariously liable under section 1983, and moreover, that the policymaking rationale of direct liability also failed because the plaintiff had not shown that the store "had a policy of arresting shoplifting suspects on less than probable cause." <u>Id.</u> at 409.

As in <u>Rojas</u>, Plaintiff's Opposition fails because it does not even contend, much less provide facts to show, that Olson established a policy of arresting conference participants without probable cause. Therefore, dismissal is required.

### B.   Count III Fails To State a Valid Claim Against The Other Administrator Defendants.

The Complaint's theory with regard to the remaining Administrative Defendants, Morrell and Harrison, is also premised solely on vicarious liability. <u>See</u> Compl. ¶ 19. Plaintiff's Opposition does not dispute that they cannot be held vicariously liable under section 1983.

Once again, Plaintiff uses his Opposition to introduce a new theory of direct liability which is apparently based on the claim that Defendants Morrell and Harrison failed to adequately supervise Georgetown's public safety officers. Plaintiff thus cites the Tenth Circuit's decision in <u>McClelland v. Facteau</u>, 610 F.2d 693, 697 (10th Cir. 1979), where it held that supervisors who were "in a position of responsibility, knew or should have known of the misconduct, yet failed to act to prevent future harm" can be held liable under section 1983. In <u>McClelland</u> the plaintiff contended that he supervisors were on notice of "prior misbehavior" but did nothing to prevent its recurrence <u>Id.</u> at 697.

8

McClelland is irrelevant to the present case, however, because the Complaint does not allege that Defendants Morrell or Harrison knew of any prior alleged misconduct or false arrests, yet "failed to prevent future harm." McClelland, 610 F.2d at 697. Therefore, there is no basis for any allegation that these Defendants had a duty to supervise or instruct Georgetown's public safety officers to guard against future false arrests or other misconduct. Moreover, the District of Columbia's Circuit has emphasized that "the overwhelming majority of courts faced with claims of supervisory liability … have determined that where responsibility is predicated on inattentiveness rather than affirmative misconduct, the plaintiff must establish a high degree of fault in order to implicate the supervisor in the constitutional infractions of his subordinates." Haynesworth v. Miller, 820 F.2d 1245, 1261 (D.C. Cir. 1987). Plaintiff must therefore allege that the Defendants "had an obligation to supervise or discipline the wrongdoers, that this duty was breached through 'gross negligence' or 'deliberate indifference' to the precautions necessary, and that this breach was the proximate cause of the constitutional violations that occurred." Robinson v. District of Columbia, 403 F. Supp. 2d 39, 50 (D.D.C. 2005) (quoting Haynesworth) (Kollar-Kotelly, J.). Plaintiff's Opposition—and certainly his Complaint—contain none of these allegations. The Opposition asserts simply that Morrell and Harrison were supervisors "on the scene." Opposition at 8, 15. Being "present on the scene"—simple inattentiveness at most—is not enough to establish liability. See International Action Center v. United States, 365 F.3d 20, 21 (D.C. Cir. 2004) ("A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for the misconduct."). Count III should therefore be dismissed as to the Administrator Defendants.

9

## II. Count III Must be Dismissed Because Georgetown's Public Safety Officers Did Not Act Under Color of State Law.

Plaintiff does not dispute that section 1983 provides a cause of action only against a person acting under color of state law. See Bennett v. United States Chess Fed'n, Civ. No. 05-2225, 2006 U.S. Dist. LEXIS 45950 (D.D.C. July 7, 2006) ("[D]efendants are private parties, not government or state actors, and, therefore, they cannot violate plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983"). Moreover, Plaintiff does not dispute that the critical issue in this case is whether the Complaint adequately alleges that Georgetown public safety officers <u>arrested</u> Plaintiff and, therefore, exercised their official powers as commissioned special police officers.

Plaintiff devotes most of his Opposition to discussing cases that outline the limits of a property owner's right to remove an individual from private property. It is simply irrelevant to Defendants' Motion, however, whether Plaintiff's presence on Georgetown University's property was privileged, or whether Plaintiff was asked to leave, or even whether the force used to remove him was reasonable. Even if Plaintiff's arguments were correct, absent the exercise of their arrest powers, the actions taken by Georgetown's public safety officers would still be the actions of private individuals and not the actions of persons acting under color of state law.

The issue properly before this Court is whether Plaintiff has adequately pled state action and therefore properly raised a claim under section 1983. As explained in Defendants' initial Memorandum and not denied by Plaintiff, the fact that Georgetown's public safety officers were commissioned special police officers does not convert every act taken by them into state action. To the contrary, courts have held that state action occurs only when the officer exercises the power of arrest—the key power granted by virtue of a special police officer commission. See United States v. McDougald, 350 A.2d 375, 378 (D.C. 1976) ("<u>the power of arrest</u> . . . <u>is the sole</u>

10

factor which distinguishes the holder of a special police commission from a private citizen.") (emphasis added).

As explained in Defendants' initial Memorandum, and unrefuted by Plaintiff's Opposition, arrest "has a well-defined meaning . . . . 'An arrest is the seizing of a person and detaining him in the custody of the law.'" Coleman v. United States, 295 F.2d 555, 563-64 (D.C. Cir. 1961) (quoting Long v. Ansell, 69 F.2d 386, 389 (D.C.), aff'd 293 U.S. 76 (1934)). Plaintiff incorrectly asserts that an arrest "takes place when a person is detained for any length of time." Opposition at 13. But detaining a person does not, by itself, constitute an arrest under District of Columbia law—and the Complaint does not even allege a detention. See In re M.E.B., 638 A.2d 1123, 1126 (D.C. 1993) ("Generally, an arrest is effected when the police have made a determination to charge the suspect with a criminal offense and custody is maintained to permit the arrestee to be formally charged and brought before the court."). See also Castellon v. United States, 864 A.2d 141, 154 (D.C. 2004) (Factors that distinguish whether an arrest occurred include "the use of handcuffs, the use of weapons and the announcement of an intent to arrest."). According to the Complaint, Plaintiff was not arrested; he was simply removed from an auditorium. Even now Plaintiff describes what happened as consisting of nothing more than the fact that the Georgetown public safety officers "took hold of Mr. Maniaci" and removed him from the auditorium. See Opposition at p. 13. According to Plaintiff, "state action occurred when the officers . . . took hold of Mr. Maniaci." Id. Not only is "t[aking] hold" of a person not an arrest, but Plaintiff's theory would mean that section 1983 liability is potentially triggered whenever a commissioned special police officer touches another person. Such a theory would exponentially expand the scope of liability under section 1983 and would be contrary to established case law.

11

The cases cited by Plaintiff underscore the fact that the actions taken by Georgetown's public safety officers did not constitute an arrest. For example, in <u>Woodward & Lothrop v. Hillary</u>, 598 A.2d 1142, 1146 (D.C. 1991) security guards, who were special police officers, detained a shopper in a room, handcuffed him, searched him, seized money from him, and turned him over to the Metropolitan Police Department for transport to the police station. There, the court found that the guard had exercised his authority as a special police officer because he acted "as a state agent or instrument" because the activity in question "involves the arrest of a suspect and the actions related thereto." <u>Id.</u> at 1147. Similarly, in <u>Gabrou v. May Department Stores</u>, 462 A.2d 1102 (D.C. 1983), a case cited by Plaintiff, a security guard, who was a special police officer, took a shopper to the store's security office, held him there, told him he was under arrest, searched him, and then turned him over to police custody.

The allegations in this case are far removed from the conduct found to constitute an arrest in <u>Woodward & Lothrop</u> and <u>Gabrou</u>. There is no allegation that Plaintiff was told he was under arrest. There is no allegation that Plaintiff was searched or had his property seized. There is no allegation that Plaintiff was taken into custody by a Georgetown public safety officer or turned over to the custody of the Metropolitan Police Department. There is also no allegation that Defendant Olson instructed the Georgetown public safety officers to arrest Plaintiff. Here, Plaintiff alleges that Georgetown's public safety officers removed Plaintiff from a university auditorium at Defendant Olson's request, barred him from entering another university building, told him to leave Georgetown's campus. <u>See</u> Compl. ¶¶ 4-7. Indeed, Plaintiff specifically alleges that he was told by Georgetown public safety officers that he was not under arrest. <u>See</u> Compl. ¶ 6. This conduct is consistent with that of a private property owner excluding someone who is unwelcome and carries none of the indicia of an arrest. As a matter of law, Plaintiff has

not alleged facts showing an arrest, therefore, the Complaint does not properly allege state action. Without an adequate allegation of state action, Count III must be dismissed.

### III.     Counts I, II, and IV Must Be Dismissed With Respect to the Administrator Defendants Because Vicarious Liability is Not A Proper Basis for Liability.

Plaintiff also seeks to hold the Administrator Defendants vicariously liable for the actions of Georgetown's public safety officers with regard to the state law claims in Count I (assault and battery) and Count II (false arrest). (Count IV is merely a plea for punitive damages and thus must be dismissed if the substantive counts are dismissed). Plaintiff fails to rebut the settled legal principle that, without allegations of direct liability, a supervisor cannot be held vicariously liable for the acts of a fellow employee.

The cases cited by Plaintiff support Defendants' argument that *respondeat superior* is not a proper basis for liability. As with his Section 1983 claim in Count III, Plaintiff relies on the Tenth Circuit's decision in McClelland, 610 F.2d at 694, a case involving the alleged failure to train and supervise—claims not alleged here. The McClelland court explicitly rejected vicarious liability as a theory for holding supervisors responsible for their subordinates' wrongs. Instead, it predicated liability on the fact that the supervisor had notice of prior misbehavior and failed to prevent such misbehavior from recurring. Id. at 697. As already discussed in Section I.B., Plaintiff does not even come close to alleging a basis for supervisors' liability under the law of the District of Columbia Circuit. See, e.g., Haynesworth v. Miller, 820 F.2d 1245, 1261 (D.C. Cir. 1987) (affirming dismissal of claim based on *respondeat superior* theory against city government and police chiefs). Similarly, in King v. Kidd, 640 A.2d 656, 666 (D.C. 1993), the court found that a supervisor was himself directly liable because he personally contributed to a hostile work environment through his treatment of the plaintiff. Plainly, neither case supports the application of vicarious liability here.

13

Here, the Complaint makes no allegation that, as in McClelland, any of the Administrator Defendants had notice of prior civil rights violations and failed to prevent such violations from occurring in the future with regard to Plaintiff. The Complaint makes no allegation that Administrator Defendant Morrell "was adequately put on notice of prior misbehavior" by Georgetown's public safety officers, McClelland, 610 F.2d at 697, and no such "prior misbehavior" is alleged. Nor does the Complaint allege that Defendant Morrell failed to supervise and prevent such violations. The same is true as to Defendant Harrison.

The Complaint also does not allege that, as in King, any of the Administrator Defendants themselves took action against Plaintiff that constituted assault and battery and false arrest. Plaintiff has not alleged that any of the Administrator Defendants had notice of prior violations, failed to prevent a recurring violation, caused the alleged injuries by failing to train Georgetown public safety officers, made a policy that caused the alleged injuries, or took direct action that constituted an assault and battery or false arrest. Rather, the Complaint alleges only that Georgetown's public safety officers were under the "direction and control" of the Administrator Defendants. See Compl. ¶ 9, Opposition at 15. This allegation, taken as true, pleads only a theory of vicarious liability, which is insufficient to state a claim against the Administrator Defendants as to Counts I and II.

Finally, Count IV, which is a plea for punitive damages, should be dismissed along with Counts I, II and III against the Administrator Defendants.

## CONCLUSION

For the reasons stated, the Court should grant judgment on the pleadings dismissing Count III as to all Defendants, and dismissing Counts I, II and IV as to the Administrator Defendants.

February 26, 2007                              Respectfully submitted,


                                                              /s/ John J. Buckley, Jr.
John J. Buckley, Jr., D.C. Bar No. 925081
Malachi Jones, D.C. Bar No. 455555
Colleen F. Shanahan, D.C. Bar No. 496605
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Jbuckley@wc.com
(202) 434-5000
(202) 434-5058 (fax)

*Of Counsel:*
Jane E. Genster
Vice President and General Counsel
Georgetown University
37th & O Streets, NW
Washington, DC 20057
(202) 687-6500
(202) 687-6527 (fax)

Attorneys for Defendants Georgetown University,
David F. Morrell, Darryl K. Harrison,
Erik Smulson, Todd Olson, and George W. Taylor

## CERTIFICATE OF SERVICE

  I certify that the foregoing document was filed with the Court on the 26th day of February, 2007, and that service was made via ECF and by First Class Mail to:

    Thomas Fortune Fay, Esq.
    601 Pennsylvania Avenue, NW
    #900 – South Building
    Washington, D.C. 20004


       ___/s/ John J. Buckley, Jr._____
       Colleen F. Shanahan
       Counsel for Defendants