UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM MANIACI,

    Plaintiff,

    v.

GEORGETOWN UNIVERSITY, *et al.*,

    Defendants.

Civil Action No. 06–1625 (CKK)

**MEMORANDUM OPINION**
(September 10, 2007)

On September 20, 2006, Plaintiff, William Maniaci, filed suit against Georgetown

University, various Georgetown officials, and a Georgetown University Public Safety Officer for

damages related to injuries he sustained upon being removed from the Palestinian Solidarity

Conference held at Georgetown on February 18, 2006. Presently before the Court are Plaintiff's

[18] Motion for Leave to File Amended Complaint and [17] Defendants' Motion for Partial

Judgment on the Pleadings. After considering the aforementioned motions and the filings related

thereto, as well as the relevant statutes and case law, the Court shall GRANT Plaintiff's [18]

Motion for Leave to File Amended Complaint, DISMISS WITH PREJUDICE George W. Taylor

and Eric Smulson from the instant action, and GRANT IN PART and DENY IN PART [17]

Defendants' Motion for Partial Judgment on the Pleadings. The Court shall GRANT

Defendants' Motion for Partial Judgment on the Pleadings with respect to Count II as it pertains

to Defendants Olson, Morrell, and Harrison. Furthermore, the Court shall permit Plaintiff to

amend Count III (and only Count III) of the Amended Complaint to clarify the basis for

Plaintiff's claims with respect to both Georgetown University and Defendants Olson, Morrell,

and Harrison by September 21, 2007, with an opportunity for Defendants to file an appropriate

response with respect thereto by October 5, 2007.  If Plaintiff does not amend Count III of his

Amended Complaint to more clearly set forth the basis for both Defendant Georgetown

University's and the Administrator Defendants' liability, the Court shall dismiss Count III with

respect to both Georgetown University and the Administrator Defendants.  At present, the Court

shall DENY Defendants' Motion in all other respects.

## I.  BACKGROUND

On February 18, 2006, Plaintiff, a 64-year old man wearing a business suit and walking

with a cane, attended the Palestinian Solidarity Conference held at Georgetown University.  Am.

Compl. ¶ 2.  Georgetown University is a non-profit corporation organized under the laws of the

District of Columbia.  *Id.* ¶ 8.  Plaintiff paid a fee to register as a participant in the Conference.

*Id.* ¶ 2.  He was given a document entitled "Speech and Expression at Georgetown University,"

stating a ban on "unlawful activity, actions that endanger or imminently threaten others, or

activities that disrupt or obstruct the functions of the University."  *Id.*

Plaintiff attended a program in Gaston Hall on the topic of "divestment by Georgetown

University of investments connected in some manner with Israel."  *Id.*  At the end of the

panelists' presentations, the panel took questions from the audience.  *Id.* ¶ 3.  Plaintiff asked the

panel the following question:  "If you approve or disapprove of the use of suicide bombers who

murder innocent Israeli citizens as a means to accomplish your goals?"  *Id.*  Plaintiff asked the

question approximately three times (without hearing what he considered to be a responsive

answer).  *Id.*  Defendant Todd Olson, Vice President for Student Affairs of Georgetown

University (hereinafter, "Defendant Olson"), "indicated that he wanted Georgetown University

Police . . . to remove the Plaintiff." *Id.*

Georgetown University Public Safety Officers Roy Eddy (hereinafter, "Defendant Eddy") and Larry Salley (hereinafter, "Defendant Salley") approached Plaintiff and allegedly "violently jerked [Plaintiff] from his seat. . . ." *Id.* ¶ 4. Plaintiff allegedly "felt a blow to his right side," was "thrown onto the aisle floor and dragged down the aisle," and consequently hit his head and limbs. *Id.* During this period, bystanders allegedly requested that Defendant David F. Morrell, Vice President for Campus Safety (hereinafter, "Defendant Morrell") intervene; Defendant Morrell allegedly "refused." *Id.* "An University official approached [Plaintiff] and told him to leave and walked with him out to the main entrance." *Id.* ¶ 5.

Plaintiff, accompanied by two other individuals, then approached the Georgetown University Inter-Cultural Center. *Id.* ¶ 6. Plaintiff was then "surrounded by six campus police officers and was pushed against a glass window." *Id.* Though Plaintiff asked if he was being arrested and was told "no," Plaintiff alleges that he was "blocked" and "was told not to go anywhere." *Id.* Plaintiff allegedly told the officers that he was not feeling well and needed to use the restroom (in part due to a medical condition). *Id.* "An officer stepped towards [Plaintiff], forcing him to back up and making it impossible to move past the officer." *Id.* Defendant Morrell then informed Plaintiff that he was being "barred from the conference." After Plaintiff repeatedly asked to use the restroom, he was permitted to do so by an officer who kept the door to the restroom open while Plaintiff relieved himself. *Id.* Plaintiff was then approached by an officer of the District of Columbia Metropolitan Police Department, who had been called by Georgetown University to escort Plaintiff off of the campus. *Id.*

The following day, Plaintiff "blacked out" and was brought to Walter Reed Army

3

Medical Center. *Id.* ¶ 7. Plaintiff was informed that he had "suffered a concussion, sprain of the right ankle, contusions to the right abdomen, right upper arm, right wrist, and abrasions to the legs." *Id.*

On September 20, 2006, Plaintiff filed a four-count Complaint against Defendants. Defendants filed an Answer on October 12, 2006. On November 21, 2006, the Court held an Initial Scheduling Conference, at which time a deadline of March 1, 2007 was set for the filing of any motion to amend the pleadings. However, on January 15, 2007, Defendants filed [17] Defendants' Motion for Partial Judgment on the Pleadings ("Defs.' Mot. for Part. J."), pursuant to Federal Rule of Civil Procedure 12(c), which is now fully briefed. On January 25, 2007, Plaintiff filed a [18] Motion for Leave to File Amended Complaint pursuant to Federal Rule of Civil Procedure 15, with the Amended Complaint attached thereto. Plaintiff's Amended Complaint, which is referenced in the background section of this Memorandum Opinion, identifies (and thus adds) Defendants Eddy and Salley as the Georgetown Public Safety Officers who removed Plaintiff from the conference; Plaintiff states that the original Complaint identified "George W. Taylor as one of the Officers . . . in error." Pl.'s Mot. to Amend at 1. Furthermore, the original Complaint had identified a Defendant Eric Smulson; however, "[b]ased upon the deposition testimony, Plaintiff has concluded that [] Defendant Eric Smulson's connection to the occurrence was solely in a public relations function and that he exercised no supervisory power over the Public Safety Officers." *Id.* Plaintiff therefore requested that the Court allow the Amended Complaint to be filed, Mr. Taylor and Mr. Smulson be "dismissed without prejudice" as defendants, and that the briefing schedule with respect to Defendants' Rule 12(c) Motion be modified. *Id.* at 2. Defendants consented to Plaintiff's request to amend the complaint, but

4

contested (1) the dismissal without prejudice (as opposed to with prejudice) of Mr. Taylor and Mr. Smulson and (2) any modification of the briefing schedule. The Court notes that Plaintiff adhered to the original briefing schedule such that Defendants' second concern is moot. With respect to whether Mr. Taylor and Mr. Smulson should be dismissed from this action with or without prejudice, the Court notes that Plaintiff never filed any Reply indicating why Mr. Taylor and Mr. Smulson should be dismissed without prejudice in light of Plaintiff's own admissions that said individuals were included in error in the original Complaint. Accordingly, the Court shall GRANT with Defendants' written consent Plaintiff's [18] Motion for Leave to File Amended Complaint and DISMISS WITH PREJUDICE George W. Taylor and Eric Smulson from the instant action.

In Count I of Plaintiff's Amended Complaint, Plaintiff alleges the torts of assault and battery under the common law of the District of Columbia against Defendant Georgetown University, Defendant Morrell, Defendant Olson, Defendant Eddy, Defendant Salley, and Defendant Darryl K. Harrison, Georgetown University Director of the Department of Public Safety (hereinafter, "Defendant Harrison"), who was allegedly also present during the incident. Am. Compl. ¶ 11. Plaintiff alleges that Defendants Morrell, Olson, and Harrison (collectively, the "Administrator Defendants") ordered Plaintiff's removal, had authority over Defendants Eddy and Salley (collectively, the "Safety Officer Defendants"), and failed to prevent harm to Plaintiff. *Id.* ¶¶ 9, 11, 12, 13. Furthermore, the Safety Officer Defendants "placed Plaintiff in apprehension of commission of a battery" and struck and inflicted injuries upon Plaintiff. *Id.* ¶ 11. Count I further states that "[a]s a direct and proximate consequence of the reckless and excessive conduct of the Defendant's employees and/or agents, including Officers Roy Eddy and

Larry Salley, which was ratified and is implied by law to the Defendants, Georgetown University, David F. Morrell, Darryl Harrison, and Todd Olson, the Plaintiff suffered physical injuries . . . which have been accompanied by great pain and suffering, humiliation and embarrassment . . . ." *Id.* ¶ 13.  In Count II, Plaintiff alleges that the Safety Officer Defendants restrained Plaintiff against his will and without probable cause, committing the tort of false arrest.  *Id.* ¶ 15.  Count II further alleges that Defendant Georgetown and the Administrator Defendants are "vicariously liable" for the Safety Officer Defendants' actions and consequently Plaintiff's injuries and "mental anguish."  *Id.* ¶ 16.  In Count III, Plaintiff alleges that the Safety Officer Defendants violated Plaintiff's First and Fourth[1] Amendment rights by accosting, assaulting, and falsely arresting Plaintiff, preventing Plaintiff from using the restroom, using force against Plaintiff, and harassing, humiliating, and embarrassing Plaintiff.  *Id*. ¶ 18.  Count III further alleges violation of Section 1983 for preventing Plaintiff from participating in the conference and "[f]ailing to act and stop the Officers from applying excessive force."  *Id.*  Count III further states that the Safety Defendant Officers' conduct is "implied by law" to the remaining Defendants.  *Id.* ¶ 19.  In Count IV, Plaintiff requests punitive damages.  *Id.* ¶¶ 20, 21.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The appropriate standard for reviewing a motion for judgment on the

---

[1]  While the Amended Complaint only alleges a violation of Plaintiff's First Amendment rights, Defendants correctly note that Plaintiff's allegation that he was deprived of "freedom from arrest except upon probable cause," Am. Compl. ¶ 18, constitutes an allegation of a Fourth Amendment violation.  Defs.' Mot. for Part. J. at 5 n.2.

pleadings is virtually identical to that applied to a motion to dismiss under Rule 12(b)(6). *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006); *Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)."). Because a Rule 12(c) motion "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," the Court must treat Defendants' motion "with the greatest of care" and deny it "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Haynesworth v. Miller*, 820 F.2d at 1254.

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted). Hence, although "a well-pleaded

7

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" *id*. (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,'" *id*. at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

In evaluating either a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must not rely on facts outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *See Jung*, 339 F. Supp. 2d at 36.  *See also In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  While the court must construe the complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d

1221, 1226 n.6 (D.C. Cir. 1993).[2]

## III.  DISCUSSION

### A.    *Defendants' Rule 12(c) Motion Is Not Premature*

Parties are entitled to pretrial judgment on the pleadings, "only if, after the close of the

pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a

matter of law." *Transworld Prods. Co. v. Canteen Corp.*, 908 F. Supp. 1, 1 (D.D.C. 1995)

(citing *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).  Pleadings

are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a

complaint and an answer have been filed.  *See* Fed. R. Civ. P. 7(a) ("There shall be a complaint

and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the

answer contains a cross-claim; a third-party complaint, if a person who was not an original party

is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint

is served.  No other pleading shall be allowed, except that the court may order a reply to an

---

[2] Despite Defendants' claims to the contrary, *see* Defs.' Mot. for Part. J. at 4-5, a heightened pleading standard does not apply to this case.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 419 (D.C. Cir. 1996) ("[P]laintiffs alleging municipal liability under 42 U.S.C. § 1983 need not satisfy any heightened pleading standard").  Defendants cite to *Martin v. Malhoyt*, 830 F.2d 237, 257 (D.C. Cir. 1987), which stands for the proposition that "damage actions against government officers" "requir[e] plaintiffs normally to come forward with 'non-conclusory allegations of evidence,'" and applies a heightened pleading standard to such actions. *Martin* specifically dealt with an action against public officials invoking qualified immunity. *Id.* at 256.  The Court notes two distinguishing factors in this case.  First, the Administrative Defendants do not appear to be public officers.  Second, while Defendants have not briefed the issue of qualified immunity, they state in their Motion that only the Public Safety Officers "are entitled to have qualified immunity if they are held to be state actors."  Defs.' Mot. for Part. J. at 5 n.1.  To the extent that the Public Safety Officers who committed the acts alleged in this case are public "officials" (rather than lower-level state actors) for heightened pleading purposes, the allegations set forth by Plaintiff in his Amended Complaint with respect to these officers would meet a heightened pleading standard.

answer or a third-party answer.").

Plaintiff filed his original complaint on September 20, 2006, answered by Defendants on October 12, 2006. However, at the Initial Scheduling Conference on November 21, 2006, the Court set a deadline of March 1, 2007, by which date Plaintiff would be permitted to submit a motion to amend his Complaint pursuant to Rule 15(a). Accordingly, Plaintiff argues that the pleadings were not "closed" until the deadline by which Plaintiff could file a motion to amend his complaint had passed such that Defendant's Motion for Partial Judgment on the Pleadings was filed prematurely. *See* Pl.'s Opp'n at 2.

The Court concludes that the pleadings were in fact "closed" such that a Rule 12(c) motion could be appropriately filed and considered by the Court when Defendants filed their Answer–not when Plaintiff's court-imposed deadline to file a motion for leave to amend his complaint had passed. *See* Fed. R. Civ. P. 7(a). In circumstances analogous to those in the instant case, the United States District Court for the Northern District of Texas expressly rejected the plaintiff's contention that a Rule 12(c) motion was premature solely because there existed an outstanding scheduling order deadline. *See Nortel Networks Ltd. v. Kyocera Wireless Corp.*, Civ. Action No. 02-CV-0032-D, 2002 WL 31114077 (N.D. Tex., Sept. 20, 2002). The court held that once the defendant had filed an answer, the pleadings were "closed" for Rule 7(a) and Rule 12(c) purposes. *Id.* at *1 n.1 ("The fact that under the court's scheduling order there is still time for a party to move for leave to amend does not affect this reasoning.").

However, even if the pleadings had not been "closed," the Court would still be permitted to consider Defendant's Motion on the merits, as the court may consider a premature Rule 12(c) motion under Rule 12(b)(6). *See Jung*, 339 F. Supp. 2d at 36 (noting that treating a premature

10

Rule 12(c) motion as one filed pursuant to Rule 12(b)(6) does not prejudice either party because the standard of review under both rules is essentially the same); *Dale v. Exec. Office of President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001) ("If a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6)." *See also Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 894 (N.D. Cal. 1993), *declined to follow on other grounds*, *Radici v. Assoc. Ins. Cos.*, 217 F.3d 717 (9th Cir. 2000) (holding that if an entity is not yet served, a served defendant may nonetheless file a Rule 12(c) motion: "A contrary reading of Rule 12(c) would mean that a plaintiff could forever preclude a 12(c) motion simply by naming and then not serving an additional defendant.").[3]

In *Kelly v. Barreto*, the plaintiff sought the court's permission to amend his complaint after the defendant had submitted a Rule 12(c) motion. *Kelly v. Barreto*, Civ. No. 05-900, 2006 U.S. Dist. LEXIS 62626 (D.D.C. Sept. 5, 2006). Noting that the arguments set forth in the motion for judgment on the pleadings applied with equal force to the newly amended complaint, Judge Paul L. Friedman granted the plaintiff's motion to amend and "treated the motion for judgment on the pleadings as one addressed to the amended complaint." *Id.* at *6. In this case, the Court shall consider Defendants' Motion for Partial Judgment on the Pleadings, as the arguments contained therein (and fully briefed by the Parties) apply with equal force to Plaintiff's Amended Complaint.

      B.      *Plaintiff Has Alleged Facts Sufficient to State a Claim Pursuant to Section 1983*

---

[3] The court's rationale in *Moran*, as cited by this Court in *Jung*, 339 F. Supp. 2d at 35, effectively rebuts Plaintiff's argument that the motion should be deemed untimely because neither Defendant Eddy nor Defendant Salley had been served with process at the time Defendants' Motion was filed.

1.    Plaintiff has stated a claim against Georgetown University under Section 1983

Defendants argue that, as a matter of law, Georgetown University cannot be held vicariously liable for acts of constitutional deprivation undertaken by its employees. Defs.' Mot. for Part. J. at 6. Analogizing the instant matter to one of municipal liability, Defendants argue that Plaintiff has failed to state a Section 1983 claim against the institution. *Id.* To successfully state a claim for municipal liability pursuant to 42 U.S.C. § 1983, a plaintiff must allege both (1) "a predicate constitutional violation," and (2) "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (*citing Collins v. Harker Heights*, 503 U.S. 115, 124 (1992)). Defendants do not contest at this juncture that Plaintiff has alleged a "predicate constitutional violation." Thus, in the instant matter, in order for Georgetown University to be held liable under Section 1983, Defendants argue that Plaintiff must allege that an institutional policy or practice caused the Public Safety Officers' actions. Defs.' Mot. for Part. J. at 7.

 Pursuant to 42 U.S.C. § 1983, "[A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject or cause to be subjected, any person to the deprivation of any rights, privileges or immunities security by the Constitution of the United states, shall . . . be liable to the party injured . . . ." The Supreme Court held that this language evidences congressional intent to permit municipal liability under specific circumstances:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief

> where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690-91 (1978) (internal footnotes omitted).  *See also Pembaur v. Cincinnati*, 475 U.S. 469, 477-78 (1986).  However, "a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.  Rather, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983."  *Id.* at 694.

The status of "policymaker," for Section 1983 purposes, can be achieved either through express legislation or through a less formal delegation of authority.  *See Pembaur*, 475 U.S. at 483.  However, actors are not final policymakers merely because they have the authority to exercise discretion.  *See id.* at 482-83 ("The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (internal citations omitted)).  *See also Triplett v. District of Columbia*, 108 F.3d 1450, 1454 (D.C. Cir. 1997) (noting that a final policymaker must be capable of more than "mere

13

exercise of discretion" (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988))).  Rather, the official must possess policymaking authority specific to the allegedly tortious conduct.  *See Pembaur*, 475 U.S. at 483 ("We hold that municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985))).

Finally, the Court notes that various circuits have applied Section 1983 and its limitations as set forth in *Monell* to private institutions such as Georgetown University where such private institutions employ quasi-state actors.  *See Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (holding that an alleged shoplifter detained by a store detective must show that an "impermissible policy" or a "constitutionally forbidden" rule or procedure of the department store was the "moving force of the constitutional violation") ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." (internal citation omitted)); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (4th Cir. 1982) (holding that an individual detained for alleged shoplifting by a state-licensed security guard could not bring suit pursuant to Section 1983 against the private employer of the guard solely on the principle of *respondeat superior*).  *See also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2nd Cir. 1990) ("[Plaintiff] is not suing . . . the arresting, 'quasi-public' officer, and [the officer's] employer [] is not responsible for the illegal arrest under the tort theory of *respondeat superior* in suits brought under § 1983.  Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the

14

plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.' Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses." (internal citations omitted) (quoting *Monell*, 436 U.S. at 691)). "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993).

Plaintiff contends that his Section 1983 claim against Georgetown University rests upon a theory of direct, and not vicarious, liability based on the actions of Georgetown's Administrators. *See* Pl.'s Opp'n at 4 ("It is important to note that some cases refer to this basis of liability as being the administrator or employer's acts in directing the actions of the subordinates and therefore, literally at least, not truly liability in a vicarious sense . . . ."). Relying upon the rationale of *Monell* and *Pembaur*, Plaintiff contends that he has sufficiently alleged facts in his Amended Complaint that indicate that the Administrator Defendants, acting as final policymakers, caused the Safety Officer Defendants to commit constitutional violations. Specifically, Plaintiff argues that Defendant Olson, in his capacity as Vice President for Student Affairs of Georgetown University, "indicated that he wanted the Georgetown University Police . . . to remove the plaintiff [from Galston Hall]." Am. Compl. ¶ 3. Additionally, Plaintiff alleges that Defendant Morrell, Vice President for Campus Safety, was directly liable for the acts committed by Safety Officer Defendants Eddy and Salley when he witnessed these individuals use excessive force and did not intervene. Am. Compl. ¶ 4. Finally, Defendant Harrison, Georgetown University's Director of the Department of Public Safety, is allegedly culpable for

15

failing to control and direct these officers. Am. Comp. ¶ 9. Only one of the three administrators needs to have facilitated the deprivation of Plaintiff's constitutional rights by the Public Safety Officers in his capacity as a "final policymaker" in order to implicate the employer, Georgetown University. As a non-profit corporation, Georgetown's administration is structured according to the parameters of D.C. statutory law. *See* Pl.'s Opp'n at 7-8; D.C. Code § 29-301.24. While the D.C. Code does lay out an organizational framework, it permits Georgetown University a great deal of discretion in delegating and allocating policymaking authority. D.C. § Code 29-301.24(a), (d). As such, discovery is required to determine whether these Defendants have been formally or informally delegated final policymaking authority and acted pursuant to that authority.

At the pleading stage, only an allegation of the existence of a policy, practice, or custom and its causal link to the constitutional deprivation suffered is required. *See Amons v. District of Columbia*, 231 F. Supp. 2d 109, 114 (D.D.C. 2002) (denying a motion to dismiss, holding as sufficient allegations that the District of Columbia "tolerated and permitted a pattern of policy harassment[,]" "permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful harassment and deprivation of liberty and property without due process of law[,]" and "policies and customs of the District of Columbia Metropolitan Police have caused officers of the District to believe that . . . misconduct would not be aggressively, honestly, and properly investigated . . . ." (internal quotations omitted)). *See also Banks v. District of Columbia*, 377 F. Supp. 2d 85, 91 (D.D.C. 2005) (noting that an actor who is responsible for the "'general direction and supervision'" of the administration, "promulgates rules to run [her] department" and exercises "vast responsibilities and expansive authority[,]" therefore "is a final policy-maker"

16

(quoting *Triplett*, 108 F.3d at 1453)).  Consequently, it would be inappropriate to dismiss

Plaintiff's Section 1983 claim against Georgetown University at this time.  While the Amended

Complaint does not expressly label the Administrator Defendants as "final policymakers," it sets

forth sufficient facts at the pleading stage to constitute claims against Georgetown University on

a theory of direct liability of its senior administrators present during the incident.  *See, e.g.*, Am.

Compl. ¶ 8. ("The actions of the Public Safety Officers were *ratified by the officials* of

Georgetown University who were present, observed the occurrence described above, and did

nothing to stop the Officers in their actions." (emphasis added)); *id.* ¶ 12 ("The Georgetown

University officials who ordered the officers to grab the plaintiff and all other *officials with*

*authority* witnessing the occurrence, *occupied a position of authority*, and knew or should have

known that the officer's actions had exceeded the force necessary, and failed to act to prevent

further harm done to the Plaintiff." (emphasis added)).

       The Court notes, however, that the Amended Complaint is not a model of clarity with

respect to Plaintiff's theory of the Administrator Defendants' liability pursuant to Section 1983,

particularly via the Plaintiff's use of the phrase "implied by law."  *See* Am. Compl. ¶ 19 ("As a

direct and proximate consequence of the reckless and excessive conduct of the Defendant

Georgetown University's employees and/or agents, including Officers Roy Eddy and Larry

Salley, which is implied by law to the Defendants, Georgetown University, David F. Morrell,

Darryl K. Harrison, and Todd Olson . . . .").  However, Plaintiff's omission of the phrase

"vicarious liability" with respect to his Section 1983 claim (despite the term's use with respect to

Plaintiff's false arrest claim) and allegations of "[p]reventing [Plaintiff] from participating in the

Palestinian Conference, for which he had registered and paid a fee," and "[f]ailing to act and stop

the Officers from applying excessive force toward [Plaintiff]" sufficiently support allegations of direct liability against the Administrator Defendants such that the Court shall permit Plaintiff to amend Count III (and only Count III) of the Amended Complaint to clarify the basis for Plaintiff's claims by September 21, 2007, with an opportunity for Defendants to file an appropriate response with respect thereto by October 5, 2007. If Plaintiff does not amend Count III of his Amended Complaint to more clearly set forth the basis for both Defendant Georgetown University's and the Administrator Defendants' liability (the latter of which shall be discussed in the next section), the Court shall dismiss Count III with respect to both Georgetown University and the Administrator Defendants.

2.    <u>Plaintiff has sufficiently alleged facts indicating liability of the Administrator Defendants under Section 1983</u>

Defendants next contend that Plaintiff has failed to state a Section 1983 claim against the Administrator Defendants. Defs.' Reply at 8. They characterize Plaintiff's allegations of constitutional deprivation as "premised solely on vicarious liability" and move to dismiss as a matter of law. *Id.*

The Court agrees that a Section 1983 claim cannot be made on a theory of vicarious liability or *respondeat superior*. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because its employee is a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). However, as previously noted, Plaintiff's claims against the Administrator Defendants appear to turn, at least in part, on a theory of direct liability. For example, Defendant Olson is allegedly liable for violating Plaintiff's First Amendment rights by ordering Plaintiff's removal via the Public Safety Officers from the

18

Palestinian Solidarity Conference, for which Plaintiff had purchased admission.  Am. Compl. ¶ 11(a) ("Georgetown University officials ordered Georgetown University Public Safety Officers to forcefully remove William Maniaci from Georgetown University premises notwithstanding the license with an attendant guarantee to free speech he had purchased . . . .  Those officers complied with said order.").

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," as "a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations." *Pembaur*, 475 U.S. at 480, 481.  *See also Achtinson*, 73 F.3d at 423 ("[Plaintiff's] complaint is adequate even though it alleges only one instance of unconstitutional conduct. . . .  A complaint describing a single instance of official misconduct and alleging a failure to train may put a municipality on notice of the nature and basis of a plaintiff's claim.").  Incorporating the Court's discussion of officials with policymaking authority and subject to Plaintiff's amending Count III of the amended complaint to clarify the basis for liability as set forth above, the Court concludes that Plaintiff has–at this time–sufficiently alleged facts supporting Plaintiff's theory that Defendant Olson is directly liable for violating Plaintiff's First Amendment rights to withstand a Rule 12(c) motion.

Additionally, Plaintiff seeks to hold Defendants Harrison and Morrell directly liable for the actions of the Public Safety Officers, who were allegedly under their direction and control. *See e.g.*, Am. Compl. ¶ 9 ("Said officers were at all times *under the control and direction* of Georgetown University senior staff persons identified as David F. Morrell, Vice President for Campus Safety and Darryl K. Harrison, Georgetown University, Director - Department of Public

Safety." (emphasis added)). Inaction by a defendant can support a Section 1983 claim only in a limited set of circumstances. Such a finding is consistent with the principles set forth in *Monell* only if failure to act itself constitutes a policy or practice, created, for instance, by continued acquiescence to actions that deprive individuals of their rights. *See Canton v. Harris*, 489 U.S. 378, 388-89 (1989) ("This rule is most consistent with our admonition in *Monell* . . . that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" (quoting *Monell*, 436 U.S. at 694)); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997). Such inaction, typically defined as a failure to train or supervise, must evidence deliberate indifference or gross negligence with respect to the alleged constitutional deprivation. *See Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) ("[I]naction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to '"deliberate indifference" towards the constitutional rights of persons in its domain.'" (quoting *Harris*, 489 U.S. at 388-89, 389 & n.7)). Furthermore, the D.C. Circuit has emphasized that "the overwhelming majority of courts faced with claims of supervisory liability . . . have determined that where responsibility is predicated on inattentiveness rather than affirmative misconduct, the plaintiff must establish a high degree of fault in order to implicate the supervisor in the constitutional infractions of his subordinates." *Haynesworth*, 820 F.2d at 1261. Deliberate indifference is itself defined through an objective assessment of "'whether the municipality knew or should have known of the risk of constitutional violations,' and yet failed to respond as necessary." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 53 (D.D.C. 2005) (quoting *Baker*, 326 F.3d at 1307).

Supervisors or governing bodies are typically liable for inaction only if they ignore repeated offenses perpetrated by those under their supervision. *See Harris*, 489 U.S. at 390 n.10 ("It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need."); *Atchinson*, 73 F.3d at 421. In this way, an "affirmative link" is created between the acts of the inferior and the supervisor, and the latter may be held liable pursuant to Section 1983. *McClelland v. Facteau*, 610 F.2d 693, 696 (10th Cir. 1979). However, the Court notes that in the instant case, Plaintiff appears to allege an underlying failure to supervise (rather than a failure to train) based in part on Defendant Harrison and Defendant Morrell's actual presence during the incident in question, which may in and of demonstrate that the constitutional violations alleged were "plainly obvious."

At this early stage in the proceedings, the Plaintiff need only satisfy the minimal requirements of Rule 8(a) in order to overcome a Rule 12(c) motion. *Atchinson*, 73 F.3d at 421 (D.C. Cir. 1996) ("*Leatherman* thus makes clear that a complaint alleging municipal liability under section 1983 for failure to train is to be judged not by the standards that would govern a decision on the merits, but by the liberal standard of Rule 8." (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 163-69 (1993))). "Plaintiff must also aver, and ultimately prove, that the defendants' failings were substantial factors in bringing about the harm complained of." *Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 274 (D.D.C. 2006) (citing *Tarpeh-Doe v. United States*, 28 F.3d 120, 124 (D.C. Cir. 1994)).

Though Plaintiff does not expressly state a claim for negligent supervision or training, nor does he use the term "deliberate indifference," it is clear from the facts alleged that he intends to

21

bring suit against Defendants Morrell and Harrison based, at least in part, upon a legal theory of direct supervisory liability. Plaintiff likely satisfies the required allegation of pleading "deliberate indifference" by clearly stating that Defendants Morrell and Harrison witnessed first-hand and knew or should have known that the force used was excessive, but did nothing to stop the Public Safety Officers. *See* Am. Compl. ¶ 13 ("The Georgetown University officials who ordered the officers to grab the Plaintiff and all other officials with authority witnessing the occurrence, occupied a position of authority, and knew or should have known that the officer's actions had exceeded the force necessary, and failed to act to prevent further harm done to Plaintiff."). The Complaint has placed Defendants on notice of Plaintiff's intention to argue that Defendants Morrell and Harrison are directly liable for failing to intervene to stop the allgedly excessive use of force and by not properly supervising Defendants Eddy and Salley. Am. Compl ¶ 4. Plaintiff has also alleged a causal link between the inaction and the constitutional deprivation by claiming that the administrators "witnessed the occurrence, occupied a position of authority, and knew or should have known that the officer's [sic] actions had exceeded the force necessary, and *failed to act to prevent further harm* done to the Plaintiff. *Id.* ¶ 12 (emphasis added). Accordingly, while the Court shall require Plaintiff to set out his apparent theory of the Administrator Defendants' liability by amending Count III of the Amended Complaint as set forth in the preceding section, the Court shall not at this juncture dismiss Count III against the Administrator Defendants.

       C.    *Plaintiff Has Alleged Facts Sufficient to Satisfy the State Action*
                *Requirements of Section 1983*

Defendants contend that even if the Administrator Defendants and the University are found to be directly liable under Section 1983, the Amended Complaint is still deficient because Plaintiff has failed to allege facts sufficient to "show that any of the Defendants acted under color of state law and that Georgetown's public safety officers exercised their powers of arrest as Special Police Officers commissioned by the District of Columbia."  Defs.' Mot. for Part. J. at 10.  Defendants argue that on this basis, Plaintiff's Count III should be dismissed in its entirety.

Section 1983 holds civilly liable persons who:

> [U]nder color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"  *Id.* at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  In order to commit an act under the color of law, an individual must be "clothed with the authority of state law."  *United States v. Classic*, 313 U.S. 299, 326 (1941).  A state employee performing an official duty acts pursuant to state authority, and therefore acts under the color of law.  *See Screws v. United States*, 325 U.S. 91, 107-08 (1945).  However, even if a state employee does not act with the actual authority of the state, but merely purport to exercise its

23

authority, he may be held liable for constitutional deprivation pursuant to Section 1983.  *Griffin v. Maryland*, 378 U.S. 130, 135 (1964).  The Supreme Court established a test to determine whether actions may be considered to be taken "under the color of law:"  "[T]he inquiry must be whether there is sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

 As Defendants succinctly state:  "The issue properly before this Court is whether Plaintiff has adequately pled state action and therefore properly raised a claim under section 1983."  Defs.' Reply at 10.  Defendants note that, for the sake of this motion, they do not challenge Plaintiff's contention that the use of force was unreasonable or excessive:  "The present motion does not, however, require the Court to determine whether Georgetown's public safety officers used reasonable or excessive force or even whether the Plaintiff had a right to remain on Georgetown's property."  Defs.' Mot. for Part. J. at 15.  Plaintiff alleges that Defendants Eddy and Salley, as Georgetown University Public Safety Officers, are "commissioned special police officers, vested through the District of Columbia Metropolitan Police Department.  They have the ability to protect and defend the University, including the full powers of arrest."  Am. Compl. ¶ 8 (internal quotations omitted).  Plaintiff unequivocally alleges that, as Special Police Officers, these individuals acted under the color of law–specifically District of Columbia Code § 5-129.02–during the incident in question.  *Id.* ¶ 9.

Limited only by jurisdictional constrains, special police officers in the District of Columbia possess authority to arrest suspects.  D.C. Code § 23-582(a) ("A special policeman shall have the same powers as a law enforcement officer to arrest without warrant for offenses

committed within premises to which his jurisdiction extends, and may arrest outside the premises

on fresh pursuit for offenses committed on the premises."). Accordingly, and as Defendants

themselves note, special police officers act with the actual authority of the state, for Section 1983

purposes, when they exercise the power of arrest. Defs.' Mot. for Part. J. at 12. *See Woodward*

*& Lothrop v. Hillary*, 598 A.2d 1142, 1145 (D.C. 1991) ("Thus, we have little difficulty

concluding that action by a special police officer fairly attributable to the state . . . also satisfies

the 'color of law' prerequisite for a § 1983 suit.").

Defendants' Motion, however, rests upon a narrow interpretation of Section 1983,

arguing that "a Special Police Officer is a state actor for the purposes of § 1983 *only* when the

officer exercises the power of arrest." Defs.' Mot. for Part. J. at 12 (emphasis added). The Court

acknowledges that "[t]he power of arrest of a special policeman is the sole factor which

distinguishes the holder of a special police commission from a private citizen." *United States v.*

*McDougald*, 350 A.2d 375, 378 (D.C. 1976). However, though special police officers are not

state actors "in all their actions," they act under the color of law when they undertake to arrest an

individual or perform "actions related thereto." *Woodward & Lothrop*, 598 A.2d at 1146

(internal quotations and citations omitted). Therefore, it is irrelevant whether Defendants Eddy

and Salley, by removing Plaintiff and preventing him from entering the Inter-Cultural Center,

acted in a manner that might be construed as comparable to that typically undertaken by a private

individual as alleged by Defendants. *See* Defs.' Mot. for Part. J. at 14 ("The conduct of

Georgetown's public safety officers in removing Plaintiff from Gaston Hall and in barring his

entry into the ICC building is consistent with a private property owner's exercise of the right of

self-help to protect its property and exclude persons who have become unwanted intruders."); 16

("The Complaint fails to allege facts demonstrating that these officers did not act simply as private individuals but instead exercised the powers of arrest granted to them by their special commission as SPOs."). Rather, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." *Griffin*, 378 U.S. at 135 (internal citations omitted).

Whether or not Defendants were acting as private individuals might have acted, Defendants' actions–as set forth by the Plaintiff–suggest that Plaintiff was detained in a manner that could constitute an arrest. "'An arrest is the seizing of a person and detaining him in the custody of the law.' . . . [T]he term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued for even a short period of time." *Coleman v. United States*, 295 F.2d 555, 563-64 (D.C. Cir. 1961) (quoting *Long v. Ansell*, 69 F.2d 386, 389 (D.C. Cir. 1934)). The Supreme Court held that a restriction of "liberty of movement" can constitute an arrest. *See Henry v. United States*, 361 U.S. 98, 103 (1959). Defendants in this case insist that because Plaintiff was not read his *Miranda* rights, no handcuffs were used, the SPOs did not announce the arrest, and Plaintiff was not taken into custody, that the Public Safety Officers never acted pursuant to the authority of the District of Columbia. *See* Defs.' Mot. for Part. J. at 12; Defs.' Reply at 11. However, the absence of these particular indicia of state action is not binding as a matter of law. "'[I]n order for there to be an arrest it is not necessary that there be an application of actual force, or manual touching of the body, or physical restraint which may be visible to the eye, or a formal

26

declaration of arrest.'" *United States v. Smith*, 31 F.R.D. 553, 563 (D.D.C. 1962) (quoting *Coleman*, 295 F.2d 555, 563-64).

Plaintiff's Amended Complaint contains facts that, if taken as true, sufficiently raise a colorable claim that the Georgetown Public Safety Officers were acting under the color of law by exercising their state-granted authority to arrest or actions related thereto. The Public Safety Officers in this case were not merely verbally conveying a store policy (and thus functioning in a private capacity) as in *McDougald*. *See McDougald*, 350 A.2d at 378. On several occasions, Plaintiff sets forth facts that indicate that his physical liberty was restrained and that he was aware of the power asserted over him by the Public Safety Officers. Am. Compl. ¶ 15. Allegedly, he was physically grabbed and "violently jerked . . . from his seat." *Id.* ¶ 4. He was "surrounded by six campus police offers and was pushed against a glass window." *Id.* ¶ 6. His exit was blocked, and he was "told not to go anywhere." *Id.* "An officer stepped towards [Plaintiff], forcing him to back up and making it impossible to move past the officer." *Id.* Accordingly, at this time, the Court shall not dismiss Plaintiff's Section 1983 claim on the grounds that the Public Safety Officers were not acting under color of state law, as Plaintiff has alleged facts sufficient to suggest that an arrest or actions related thereto occurred.

   D.   *Plaintiff Alleges Facts Sufficient to Infer Direct Liability of Administrator Defendants for Actions Taken by Public Safety Officers with respect to Count I, but explicitly alleges only a theory of vicarious liability with respect to Count II*

Defendants contend that Defendants Olson, Harrison, and Morrell cannot be held vicariously liable for assault and battery or for false arrest. Defs.' Mot. for Part. J. at 16. Specifically, Defendants argue that the Administrator Defendants cannot be held liable for false arrest or assault and battery because Plaintiff inappropriately relies upon a theory of vicarious

27

liability to implicate these supervisory individuals. *Id.* (citing *King v. Kidd*, 640 A.2d 656, 666 (D.C. 1993)). Since Plaintiff specifically alleges distinct theories of liability in Counts I and II of his Amended Complaint, the Court shall address each Count of the Amended Complaint separately.

### 1. Count II (False Arrest) shall be dismissed with respect to the Administrator Defendants

Plaintiff does not contest that the Administrator Defendants cannot be held liable for a false arrest committed by the Safety Officer Defendants solely on a theory of vicarious liability. Yet upon examination of Count II of the Amended Complaint, the Court discerns that Plaintiff is explicit in only alleging that the Administrator Defendants are liable for the false arrest of Plaintiff under a theory of vicarious liability, which is a distinct theory from that set forth in both Counts I and III. *See* Am. Compl. ¶ 16 ("As a direct and proximate consequence of the actions of the Georgetown University Public Safety Officers, for which the Defendants, Georgetown University, David F. Morrell, Darryl K. Harrison, and Todd Olson are *vicariously liable*, Plaintiff, William Maniaci, suffered injuries as above detailed, and mental anguish including fright, shame and mortification, from the indignity and disgrace which resulted from that arrest." (emphasis added)). Accordingly, as Plaintiff has only alleged in his Amended Complaint that the Administrator Defendants are liable for Plaintiff's false arrest under a theory of vicarious liability, the Court shall dismiss Count II with respect to the Administrator Defendants.

### 2. Count I shall not be dismissed with respect to the Administrator Defendants because Plaintiff's allegations against the Administrator Defendants are premised on a theory of direct liability

Count I of Plaintiff's Amended Complaint alleges that Defendants are liable for the assault and battery of Plaintiff. *See* Am. Compl. ¶¶ 10-13. The Amended Complaint states that "Georgetown University, by and through their agents and *supervising officials on the scene*, David F. Morrell, Darryl K. Harrison, Todd Olson and Georgetown University Public Safety Officers, Roy Eddy and Larry Salley, committed an assault and battery upon [Plaintiff] . . . ." *Id.* ¶ 11 (emphasis added). The Amended Complaint further alleges that the "Georgetown University officials ordered Georgetown University Public Safety Officers to forcefully remove [Plaintiff] from the Georgetown University premises . . . ." *Id.* ¶ 11(a). Furthermore, Plaintiff alleges that "[t]he Georgetown University officials who ordered the officers to grab the Plaintiff and all other officials with authority witnessing the occurrence, occupied a position of authority, and knew or should have known that the officers' actions had exceeded the force necessary, and failed to act to prevent further harm done to the Plaintiff." *Id.* ¶ 12. Finally, the Amended Complaint states that Plaintiff suffered injuries "[a]s a direct and proximate consequence of the reckless and excessive conduct of the Defendant's employees and/or agents, including Officers Roy Eddy and Larry Salley, which was ratified and is *implied by law* to the Defendants, Georgetown University, David F. Morrell, Darryl K. Harrison, and Todd Olson . . . ." *Id.* ¶ 13 (emphasis added).

Defendants argue that Plaintiff only alleges that the Administrator Defendants are liable for assault and battery under a theory of vicarious liability, citing Plaintiff's use of the phrase "implied by law." Defs.' Mot. for Part. J. at 16. While it is less than clear what Plaintiff meant by "implied by law,"[4] the allegations contained within Count I of the Amended Complaint

---

[4] According to *Black's Law Dictionary*, "implied *in* law (noting the distinction and the absence of the phrase "implied by law" in the *Dictionary*) is defined as "[i]mposed by operation

encompass direct liability both via the alleged direction of the Public Safety Officers' actions and the negligent supervision of the Officers during the incident. Supervisors cannot escape suits brought for tortious acts undertaken by other employees where the harm suffered is fairly attributable to the superiors' own direction or negligence–that is where the supervisors are themselves directly liable. *See Eskridge v. Jackson*, 401 A.2d 986, 989 (D.C. 1979) ("It is generally recognized, however, that the doctrine of *respondeat superior* has no application as between a public officer and his subordinates, unless the officer directs or countenances the tortious act."); *King*, 640 A.2d at 667 n.13 ("Of course, if a supervisory public officer directs or countenances the tortious act of a subordinate, then that officer is subject to direct, rather than vicarious, liability for his or her own actions . . . .") (internal quotations and citations omitted)).

Plaintiff need only allege actual or constructive knowledge of the dangerous or incompetent actions of the Public Safety Officers and that the Administrator Defendants "failed to take prompt remedial action." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985) ("To invoke this theory of liability [negligent hiring or supervision] it is incumbent upon a party to show that an employer knew or should have known its *employee* behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee."); *King*, 640 A.2d at 666-67 ("[T]he trial court's . . .. statement of the standard of liaiblty–'that King knew or should have known of the harassment in question and failed to take prompt remedial action' indicates the court was applying a standard of direct liability attributable to King's own actions or inactions, not a standard of vicarious liability."). A plaintiff can sufficiently allege that supervisors possessed the

_____

of law and not because of any inferences that can be drawn from the facts of the case." *Black's Law Dictionary* (8th Ed.) at 770.

requisite state of awareness by showing active collusion with the tortfeasors over whom they

exercised control or even by showing that they witnessed the tortious action and did not

intervene.  *See id.* at 674-75; *Brown v. Argenbright Sec.*, 782 A.2d 752, 760 (D.C. 2001)

(upholding summary judgment for defendant (a supermarket) on a claim of negligent supervision

in part because no person with supervisory authority saw the incident at issue or had an

opportunity to stop it).

When alleging Administrator Defendants' liability with respect to Count I, Plaintiff

contends that Defendant Olson actually ordered the Public Safety Officers to remove Plaintiff

from the building and that all three Administrator Defendants were on the scene as the alleged

assault and battery occurred.  Accordingly, Plaintiff has adequately alleged that the Administrator

Defendants were "negligent or reckless . . . . in permitting, or failing to prevent . . . tortious

conduct by persons, whether or not his servants or agents, upon premises or with

instrumentalities under his control," Restatement (Second) of Agency § 213(d), "in the

supervision of the activity," *id.* § 213(c), and in the case of Defendant Olson, "in giving improper

or ambiguous orders or in failing to make proper regulations," *id.* § 213(a).  Accordingly, the

Court shall not dismiss Count I against any of the Administrator Defendants.

E.    *Plaintiff's Punitive Damages Claim Shall Not Be Dismissed*

Defendants' Motion states that "Count IV is merely a plea for punitive damages and not a

cause of action.  Since Counts I, II, and III of the Complaint must be dismissed in their entirety as

to the Administrator Defendants, Count IV must be dismissed as well."  Defs.' Mot. for Part. J. at

18.  However, as the Court shall only dismiss Count II (and no other Counts) at this time with

respect to the Administrator Defendants, claims remain against all Defendants in this case such

that Defendants' request that Count IV be dismissed on the basis of all other counts being dismissed shall be denied.

## IV.  CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT Plaintiff's [18] Motion for Leave to File Amended Complaint, DISMISS WITH PREJUDICE Defendant George W. Taylor and Defendant Eric Smulson from the instant action, and GRANT IN PART and DENY IN PART [17] Defendants' Motion for Partial Judgment on the Pleadings.  The Court shall GRANT Defendants' Motion for Partial Judgment on the Pleadings with respect to Count II as it pertains to Defendants Olson, Morrell, and Harrison.  Furthermore, the Court shall permit Plaintiff to amend Count III (and only Count III) of the Amended Complaint to clarify the basis for Plaintiff's claims with respect to both Georgetown University and Defendants Olson, Morrell, and Harrison by September 21, 2007, with an opportunity for Defendants to file an appropriate response with respect thereto by October 5, 2007.  If Plaintiff does not amend Count III of his Amended Complaint to more clearly set forth the basis for both Defendant Georgetown University's and the Administrator Defendants' liability, the Court shall dismiss Count III with respect to both Georgetown University and the Administrator Defendants.  At present, the Court shall DENY Defendants' Motion in all other respects.  An Order accompanies this Memorandum Opinion.


Date:   September 10, 2007

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge