IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
WILLIAM MANIACI                     )        Docket No. 06 CV 01625
                                    )
          Plaintiff,                )        Judge Kollar-Kotelly
                                    )
          v.                        )        **<u>Oral Argument Requested</u>**
                                    )
GEORGETOWN UNIVERSITY, et al.       )
                                    )
          Defendants.               )
_____ )


<u>**DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF
GENUINE ISSUES SETTING FORTH ALL MATERIAL FACTS IN OPPOSITION
TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
REGARDING THE MOTION FOR SUMMARY JUDGMENT**</u>

John J. Buckley, Jr., D.C. Bar No. 925081
Malachi B. Jones, D.C. Bar No. 455555
Richa S. Dasgupta, D.C. Bar No. 500509
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
jbuckley@wc.com
(202) 434-5051
(202) 434-5058 (fax)

*Of Counsel:*
Jane E. Genster, D.C. Bar No. 939850
Vice President and General Counsel
Georgetown University
37th & O Streets, N.W.
Washington, D.C. 20057
(202) 687-6500
(202) 687-6527 (fax)

*Attorneys for Defendants Georgetown
University, David F. Morrell, Darryl K.
Harrison, Todd Olson, Roy Eddy and
Larry Salley*

March 18, 2008

Defendants Georgetown University, David F. Morrell, Darryl K. Harrison, Todd Olson, Roy Eddy and Larry Salley, by and through counsel, hereby set forth their reply to Plaintiff's Statement of Genuine Issues Setting Forth All Material Facts in Opposition to Defendant's Statement of Material Facts Not In Dispute Regarding the Motion for Summary Judgment ("Pl. Response Facts").

1.  Plaintiff admits this paragraph; therefore, no response is required.

2.  Plaintiff admits this paragraph; therefore, no response is required.

3.  Plaintiff purports to deny this paragraph yet fails to provide a citation to the record supporting his denial.  Instead, Plaintiff misrepresents his own deposition testimony on March 29, 2007 which is excerpted below.

> Q    And when did you cease being acting chairman?
>
> A    I stepped down when we had a leadership conference.  And because I wanted to spend more time with my family.  I was retired. And for health reasons.  And that's when Matt Finberg took over as chairman.
>
> Q    What year was that?
>
> A    About 3 years ago.  I think.  Yeah, about 3 -- 3 years ago.  Two or 3 years.
>
> Q    2004, approximately?
>
> A    Approximately, yeah.  I think.
>
> Q    Were you always acting chairman or did you ever become just chairman?
>
> A    Well, **when Irv Rubin died, I was the chairman and retained that position until the conference that we had**.  And I stepped aside and we elected Matt Finberg.
>
> Q    Where was the conference held?
>
> A    At -- in Reno, Nevada, at the Atlantis Hotel.

Q    **And after you stepped down as chairman, did you continue as chief of security?**

A    **Yes.**

Q    **And did you assume any other position, such as deputy chairman or any other title?**

A    **No.  No.  I was chief of security. The -- was slash -- security/intelligence.** And that involved keeping track of various nefarious groups, Nazi groups, neo-Nazis, anti-Semitic activities, and funneling that information to the proper -- proper sources.

Maniaci Dep. (Def. Ex. 1) at 85-86 (emphasis added).

Moreover, Plaintiff **admits** that he attended the PSM Conference in February 2006 on

behalf of the Jewish Defense League ("JDL").  *See* Pl. Response Facts ¶ 52.

Finally, Plaintiff has in his own words, described the JDL as a Zionist organization.  In an

email to Georgetown administrators on February 9, 2006, which is referred to in the cited portion

of Plaintiff's deposition, Plaintiff wrote, "I represent the Jewish Defense League" and that

"**[o]bviously** we are a Jewish, religious and **Zionist** organization." Ex. 33 (Maniaci e-mail) at

GTN001031 (emphasis added).  Defendants do not dispute that Plaintiff also defined Zionism in

terms of his belief "that Israel belongs to the Jewish people, and that we encourage immigration

from all countries in the world of all Jews to Israel."  Def. Ex. 1 (Maniaci Dep.) at 195-96.

4.   Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial or supporting his assertion that "this report was not published for any

regulation or necessary FBI procedure."  Pl. Response Facts ¶ 4.  In fact, the quoted portion of

the FBI Report that Plaintiff provides actually substantiates Defendants' assertion that the FBI

has described the JDL as a "violent extremist organization."  *Id; see also* Statement of John S.

Pistole, Executive Assistant Director, Counterterrorism/ Counterintelligence, FBI Before the

National Commission on Terrorist Attacks upon the United States April 14, 2004 at

2

http://www.fbi.gov/congress/congress04/pistole041404.htm (describing JDL as a "terrorist threat" and "a known violent extremist Jewish Organization").  Defendants do not dispute that Plaintiff's name does not appear in the report.

Plaintiff similarly fails to provide any citation to the record supporting his assertion that he "denies any involvement and knowledge as to this occurrence before it was discovered by law enforcement."  Pl. Response Facts ¶ 4.  Indeed, Plaintiff has testified that at the time that JDL chairman Rubin and Mr. Krugel were arrested in connection with their conspiracy to bomb the King Fahd Mosque and the office of Congressman Darrell Issa, Plaintiff was "second in command" in the JDL organization.  Def. Ex. 1 (Maniaci Dep.) at 83.

When Mr. Rubin was incarcerated in 2001, Plaintiff did not step down or distance himself from the JDL.  Rather, Plaintiff moved up in the organization taking on the role of "acting chairman" and remained in that position for at least two years.  Def. Ex. 1 (Maniaci Dep.) at 85.  Furthermore, as of February 9, 2006, Plaintiff's emails identified Messrs. Rubin and Krugel as martyrs stating, "[n]ever forget the murders of our [JDL] brothers and sisters . . . Irv Rubin . . . Earl Krugel."   Ex. 33 (Maniaci e-mail) at GTN001032; Pl. Ex. 14 at 200.

Finally, Plaintiff and his JDL colleagues left the JDL (sometime after February 2006) only when they were forced to re-name their organization "B'nai Elim" as a result of a lawsuit over the JDL trademark filed by Mr. Rubin's widow, Shelly Rubin.  Def. Ex. 1 (Maniaci Dep.) at 105–06; Def. Ex. 74 (Finberg Dep.) at 61–64.  Plaintiff's denial that this fact is material is argument and does not require a response.

5.  Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or to support his assertions that the Southern Poverty Law Center is "not a reliable source of information" and that "The Washington Post has labeled the SPLC as 'a

3

controversial, liberal organization.'" Pl. Response Facts ¶ 5. Plaintiff's denial that this fact is material is argument and does not require a response. Defendants do not dispute that the Southern Poverty Law Center is not a law enforcement agency.

6. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Plaintiff's denial that this fact is material is argument and does not require a response. Plaintiff's assertion regarding the implication of the factual assertions in Paragraph 6 is argument and also does not require a response.

7. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Plaintiff's denial that this fact is material is argument and does not require a response.

8. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Plaintiff's assertion that he was not armed while present on Georgetown's campus on February 18, 2006 is not responsive to Defendant's assertion that Plaintiff arrived at the law officers of Defendants' counsel armed with a concealed .45 caliber handgun which he kept on his person during the course of his deposition. *See* Def. Ex. 1 (Maniaci Dep.) at 12-13. Plaintiff's denial that this fact is material is argument and does not require a response.

9. Plaintiff purports to deny this paragraph, but instead quibbles with the use of the words "coordinated" and "sympathizers." In any event, Plaintiff concedes that the "JDL had planned to protest the Palestine Solidarity [Movement] Conference" and that Plaintiff attended the Conference with the "intention to collect intelligence" and "wanted to be able to know [his] enemy." Pl. Response Facts ¶ 9. He also concedes that JDL members Robert Turk, Keith Bailey, Matthew Finberg and George Haas attended the Conference with him and that the JDL paid for their travel and other expenses. *Id.*

4

10. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and also does not require a response.

11. Plaintiff admits this paragraph; therefore, no response is required.

12. To the extent that Plaintiff admits that defendant Todd Olson was an employee of Georgetown and held the position of Vice President of Student Affairs on February 18, 2006, no response is required.  The uncontradicted record also shows that Mr. Olson has held the position of Vice President of Student Affairs since 2003.  *See* Olson Dep. (Def. Ex. 5) at 6.

13. Plaintiff admits this paragraph; therefore, no response is required.

14. Plaintiff admits this paragraph; therefore, no response is required.

15. Plaintiff admits this paragraph; therefore, no response is required.

16. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertions that he "was not provided an opportunity to depose Larry Salley" and that "the attorneys for the defendant, Larry Salley, claimed not to have any contact with Larry Salley."  These assertions misrepresent the communications by Plaintiff's counsel with this Court and with Defendants' counsel.

First, Plaintiff has had every opportunity to take Mr. Salley's deposition and cannot disavow the consequences of his failure to do so.  Mr. Salley was not deposed, due primarily to Plaintiff's counsel's failure to diligently pursue discovery.  Indeed, Plaintiff's counsel waited until the very last week of fact discovery to schedule Mr. Salley's deposition.  *See* Notice of Deposition for Larry Salley (July 11, 2007) (Def. Ex. 64); Joint Status Report As To Discovery Plan (Docket no. 14) ("Non-expert depositions shall commence no earlier than January 2, 2007 and shall be completed by July 16, 2007.").  There was no reason for such delay as Mr. Salley

was identified as one of the Safety Officers who removed Plaintiff from Gaston Hall as early as January 10, 2007, during Mr. Morrell's deposition.  *See* Morrell Dep. (Def. Ex. 7) at 24.  Indeed, Plaintiff's Motion to File the Amended Complaint adding Safety Officer Salley as a defendant was filed on January 25, 2007.  Thus, despite being aware of Mr. Salley for over six months, Plaintiff's counsel did not serve him with a deposition subpoena until just two days prior to his scheduled deposition.  Ultimately Mr. Salley's July 11, 2007 deposition was cancelled.  Defendants' counsel did not represent Mr. Salley at that time.

Plaintiff initially filed a motion seeking to extend discovery, *see* Pl. Motion to Extend Discovery and For Other Relief (Docket no. 23), but effectively abandoned the motion when he failed to reply to Defendants' opposition brief and failed to file a discovery plan as ordered by this Court, *see* Sept. 10, 2007 Order (Docket no. 24).  Furthermore, during the September 28, 2007 status hearing in the above-captioned matter, Judge Kollar-Kotelly asked counsel whether they sought any additional discovery and also noted that Plaintiff's counsel had neglected to file a discovery plan.  At this time, Plaintiff's counsel, Thomas Fortune Fay **confirmed to the Court** and to Defendants' counsel that he was **not seeking any additional discovery**.  Therefore the assertion that Plaintiff was "not provided the opportunity to depose Larry Salley" is patently false as demonstrated below.

> THE COURT:  Okay.  In terms of where we are – in terms of an extension for discovery, **I had requested a discovery plan to be done by September 17th if there was going to be any request, nothing was filed, so I'm assuming that's dead as an issue**?
>
> MR. FAY:  **That's correct, Your Honor**.  We already deposed Mr. Eddy and Mr. Salley.  Now, I suppose if they come up with some unique defense, I don't know what exactly that might be, we want to leave our options – I don't anticipate anything like that, this is a pretty straightforward case.
>
> THE COURT: **Then discovery as far as I'm concerned, is done**.

*See* Tr. of Sept. 28, 2007 Status Hr'g (Def. Ex. 60) at 2-3 (emphasis added).

Second, Plaintiff's assertion that Defendants failed to provide Larry Salley's address is false as well. All of the relevant witnesses (including Larry Salley) were identified many months ago in Defendants' initial disclosures and in Defendants' Responses to Plaintiff's First Set of Interrogatories. *See* Def. Responses to Pl. First Set of Interrogatories (Def. Ex. 63) (providing Mr. Salley's address and phone number).

Finally, Plaintiff's assertion that "the attorneys for the defendant, Larry Salley, claimed to have no contact with Larry Salley" is also misleading. At the time Plaintiff sought Mr. Salley's deposition in July 2007, undersigned counsel did not represent him. Rather, as is memorialized in October 24, 2007 letter attached as Defendants' Exhibit 61, Defendants' counsel clearly indicated to Mr. Fay that they sought additional time to contact Mr. Salley in order to communicate with him about whether Defendants' counsel would represent him before filing an answer on his behalf. Plaintiff's counsel agreed to the request for additional time. *See* Stipulation (Def. Ex. 62). Then on November 6, 2007, Defendants' counsel did file an answer on Mr. Salley's behalf. As Plaintiff's counsel is well aware, if he desired to contact Mr. Salley after November 6, 2007, he could easily have done so through Defendants' counsel.

17. Plaintiff admits this paragraph; therefore, no response is required.

18. To the extent that Plaintiff admits that Students for Justice in Palestine ("SJP") is a student group at Georgetown, no response is required. Plaintiff's unsupported assertion that "no persons identified as Georgetown students have been indicated as present at the occurrence" is inaccurate. In Defendants' Responses to Plaintiff's First Set of Interrogatories, Defendants identified many current and former Georgetown students who may have been eyewitnesses to the incidents alleged in the complaint and who are believed to have organized the PSM Conference.

*See* Def. Ex. 63 (Def. Interrogatory Responses) at 6-12, 21-23; *see* also Def. Ex. 12 at 8 (Porterfield Dep.) ("The conference was held by students."). Indeed, Plaintiff himself produced documents identifying Georgetown students as participants. *See* Def. Ex. 41 (PSM Media Info Packet) at M 000111 (identifying Bayann Hamid as the president and spokesperson for SJP); Ex 10 (PSM Conference Agenda) at M 000129-30 (identifying Georgetown students Maher Bitar and Ruba Batniji as conference moderators). Plaintiff had every opportunity to take discovery from these individuals and cannot disavow the consequences of his failure to do so. Furthermore, as Plaintiff's counsel ought to be aware, Defendants' raised an objection to Plaintiff's requests for documents based on the Family Education and Privacy Rights Act ("FERPA"), 20 U.S.C. § 1232g. *See* Ex. 65 (Def. Response to Pl. Request for Production of Documents) at 3. As a result, protected information regarding Georgetown students, including their names, was redacted from many of the documents that Defendants produced. Plaintiff's counsel has never challenged or otherwise communicated with Defendants' counsel regarding their FERPA objection.

19. To the extent that Plaintiff admits that SJP sponsored the PSM Conference, no response is required. Plaintiff's unsupported assertion that "Georgetown collected the fees paid for attendance at the event" is false. The cited portion of Plaintiff's deposition, provided below, does not support this assertion.

> Q   What did you do once you arrived?
>
> A   Proceeded to whatever the hall that was, where the registration was, paid my fee. Signed up. Went through their security. Went upstairs and found a seat and sat down.

Def. Ex. 1 (Maniaci Dep.) at 232, lines 4-8. To the contrary, the uncontradicted record demonstrates that PSM Conference sponsor SJP collected the registration fee. *See* Def. Ex. 5 (Olson Dep.) at 14. Indeed, Plaintiff **acknowledges** this fact in his response to Paragraph 73.

20. Plaintiff purports to deny this paragraph, but instead quibbles with the use of the word "mission."  Defendants' Exhibit 14 speaks for itself.

21. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Indeed, Plaintiff concedes that the record demonstrates that the PSM Conference was sponsored by "a Georgetown **student organization**."  Pl. Response Facts ¶ 21 (emphasis added).  Plaintiff's unsupported assertion that "[t]echnically Georgetown University is *sponsoring* the PSM Conference" is plainly false.  *Id* (emphasis in original).

22. Plaintiff admits this paragraph; therefore, no response is required.

23. Plaintiff admits this paragraph; therefore, no response is required.

24. Plaintiff admits this paragraph; therefore, no response is required.

25. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Plaintiff's unsupported assertion that "by offering its facilities to the PSM Georgetown University is, by definition, supporting that organization" is argument and requires no response.   Pl. Response Facts ¶ 25.  Plaintiff's assertion is also inaccurate.  The uncontradicted record demonstrates that Georgetown extended benefits, which included use of the University's facilities, to the **<u>SJP</u>**.  *See* Def. Ex. 5 (Olson Dep.) at 9.  There is no evidence in the record indicating that Georgetown made any offer of its facilities to the **<u>PSM</u>**.  Defendants also do not dispute that Georgetown did not conduct an investigation of the SJP prior to granting the group access to benefits.  *See id*. at 11-12.

To the extent that Plaintiff asserts that Georgetown did not conduct any investigation with respect to the PSM prior to the PSM Conference, Plaintiff's unsupported assertion is false. The uncontradicted record demonstrates that Georgetown made inquiries with the Federal

9

Bureau of Investigation, the Metropolitan Police Department, the State Department, and the Department of Treasury that the PSM had no terrorist affiliation.  *See* Def. Ex. 7 (Morrell Dep.) at 10-12; Def. Ex. 12 (Porterfield Dep.) at 11-13.

26. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  *See* also Paragraph 25 above.

27. Plaintiff admits this paragraph; therefore, no response is required.

28. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Rather, he merely asserts that "Plaintiff has no knowledge as to this fact." In fact, Defendants' Exhibit 17 clearly indicates that the authors of the memorandum—Erik Smulson, David Morrell, Jeanne Lord and Martha Swanson —traveled to Duke on November 22, 2005.  Moreover, Plaintiff had every opportunity to take discovery on this issue and cannot disavow the consequences of his failure to do so.

29. Plaintiff purports to deny this paragraph, but instead quibbles with Defendants' summary of Defendants' Exhibit 17.  Defendants' Exhibit 17 speaks for itself.  Defendants do not dispute that the memorandum states that "[t]his event has proved to be a challenge at each institution as it tries to balance the free-speech of both the sponsors of the event and those wishing to offer counter programming or protest in a safe respectful manner."  Def. Ex. 17 (Duke Memo) at GTN 000790.  Plaintiff fails to provide any specific citation to the record to support his assertion that "no dissent from the Palestinian position was permitted."  Pl. Response Facts ¶ 29.

30. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Indeed, Plaintiff concedes that "Duke University inquired with Federal

officials who told them that [claims that the PSM has ties to terrorism] was not true" and that the PSM "does not *endorse* terrorism." *See* Pl. Response Facts ¶ 30 (emphasis in original).

31. Plaintiff admits this paragraph; therefore, no response is required. Plaintiff's assertion that "[n]one of the above is material to the occurrence" is argument and also does not require a response. Pl. Response Facts ¶ 31.

32. Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact. Indeed, Plaintiff actually concedes that "Georgetown 'made an inquiry with the Federal Bureau of Investigation, Metropolitan Police Department, the State Department and the Department of Treasury.'" Pl. Response Facts ¶ 32.

Plaintiff fails to provide any citation to the record supporting his assertion that Georgetown "never provided any specific names of the speakers that would be in attendance" to these government agencies. The January 4, 2006 e-mail exchange between Darryl Harrison and David Morrell that Plaintiff cites took place over a month before the PSM Conference and simply indicates that Harrison and Morrell did not have the names of the speakers at that time. *See* Pl. Ex. 2. This email exchange actually supports Defendants' assertion in that it confirms that the FBI intended to conduct a "complete threat assessment." *Id*.

Finally, Plaintiff's assertion that "Mr. Morrell testified that there was no investigation, or check with FBI. [sic] Metropolitan Police, or other law enforcement or security agencies with regard to any of the persons expected to attend the conference" is false and misrepresents Mr. Morrell's deposition testimony. Mr. Morrell testified (as indicated in the excerpt below) that Georgetown did not inquire with the aforementioned government agencies with regard to "any people expected to attend the conference **other than** the people who were actually speakers or members of [Students for Justice in Palestine]." Ex. 7 (Morrell Dep.) at 32-33 (emphasis added).

11

Defendants do not dispute that Georgetown did not conduct an investigation of all PSM Conference attendees.

33. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Plaintiff's assertion that "[d]iscourse, discussion, and debate were not served by the action of Georgetown when William Maniaci was immediately removed from the conference when he attempted to ask a question" is argument and does not require a response. *See* Pl. Response ¶ 33. In any event, Plaintiff's characterization of the events is thoroughly discredited by the remainder of the record as explained in Defendants' opening memorandum and reply brief. *See* Def. Mem. in Support of Summary Judgment ("Mem") at 7-11; 27-35; Def. Reply Mem. in Support of Summary Judgment ("Reply") at 13-19.

34. Plaintiff admits this paragraph; therefore, no response is required.

35. Plaintiff admits this paragraph; therefore, no response is required.

36. Plaintiff admits this paragraph; therefore, no response is required.

37. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Mr. Olson's sworn declaration stands unrebutted. *See* Olson Decl. (Def. Ex. 25) at 8-9. Plaintiff's unsupported assertion that "there is no wording in the Speech and Expression Policy that states that the Vice President for Student Affairs has no unilateral authority to deviate from the Speech and Expression Policy is false. The Speech and Expression Policy clearly states:

> The Vice President for Student Affairs has the responsibility for administering these guidelines. Only in extreme cases of violation of these guidelines can the Vice President prohibit speech and expression before it occurs. In administering these guidelines, the Vice-President **shall be advised by** a **Committee on Speech and Expression composed of students, faculty and administrators**. The Vice

President **and the Committee** **may consider and implement revisions and improvements to these guidelines in a manner consistent with the ideals articulated at the beginning of this document**.

Speech and Expression Policy (Def. Ex. 24) at M000221 (emphasis added). Thus, it is irrefutable that the Vice President for Student Affairs acts together with the Committee on Speech and Expression and that he lacks unilateral authority to deviate from the Speech and Expression Policy.

38. Plaintiff admits this paragraph; therefore, no response is required.

39. Plaintiff admits this paragraph; therefore, no response is required.

40. Plaintiff admits this paragraph; therefore, no response is required.

41. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. There is ample and wholly uncontradicted evidence in the record that none of the individuals named as defendants had authority to deviate from or amend Georgetown's Speech and Expression Policy. *See* Harrison Decl. (Def. Ex. 26) ¶ 4-5; Def. Ex. 25 (Olson Decl.) ¶ 8-9; *see* also Paragraph 37, *supra*.

42. Plaintiff admits this paragraph; therefore, no response is required.

43. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. There is ample and wholly uncontradicted evidence in the record that none of the individuals named as defendants had authority to deviate from or amend Georgetown's policy requiring the use of only reasonable force. *See* Def. Ex. 26 (Harrison Decl.) ¶ 8; Def. Ex. 25 (Olson Decl.) ¶ 10.

44. Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial. Indeed, Plaintiff actually concedes that "Robert Turk testified that

he thought the JDL first learned of the 2006 PSM Conference at Georgetown from Lee Kaplan." *See* Pl. Response Facts ¶ 44. Plaintiff's denial that this fact is material is argument and does not require a response.

45. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertion that "Lee Kaplan is not a JDL member, nor a friend of William Maniaci's." Pl. Response Facts ¶ 45. Plaintiff's denial that this fact is material is argument and does not require a response.

46. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting this assertion that "[t]his statement was Mr. Finberg's opinion, not William Maniaci's, nor the goal of the JDL." *See* Pl. Response Facts ¶ 46. Indeed, Plaintiff's citation of JDL Chairman Matthew Finberg's deposition transcript supports Defendants' assertions in Paragraph 46. Defendants do not dispute the text of Plaintiff's quotation from Mr. Finberg's deposition. Plaintiff's denial that this fact is material is argument and does not require a response.

47. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial other than his own self-serving testimony. Defendants do not dispute the accuracy of Plaintiff's quotation from his deposition transcript.

48. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial other than his own self-serving testimony.  Indeed, Plaintiff concedes that Mr. Finberg testified "that he thought that Mr. Maniaci wanted to call the Georgetown thing Operation Gideon."  *See* Pl. Response Facts ¶ 48.  Furthermore, Plaintiff has himself testified that "I think it was referring to -- Gideon, as I recall, was a film called the Sword of Gideon.  Do you remember that?  And that was an operation by the Israeli Mossad.  So that was called the Sword of Gideon.  So maybe we picked -- picked the name up from that."  Def. Ex. 1 (Maniaci Dep.) at 144.  Plaintiff's denial that this fact is material is argument and does not require a response.

49. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and does not require a response.

50. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and does not require a response.

51. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and does not require a response.

52. Plaintiff admits this paragraph; therefore, no response is required.

53. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Indeed, Plaintiff concedes that Messrs. Finberg, Turk, Haas and Bailey were JDL members and that "Plaintiff was joined by these four other members throughout his trip to Washington, D.C. to the PSM Conference."  *See* Pl. Response  Facts ¶ 52.  Defendants do not dispute that Plaintiff "was not joined by these four [JDL] members" at times other than February 17-19, 2006.

54. Plaintiff admits this paragraph; therefore, no response is required.

55. Plaintiff admits this paragraph; therefore, no response is required.

56. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  To the contrary, Mr. Turk's uncontradicted testimony is that he first met Mr. Kaplan the day before the Conference because Mr. Kaplan "was staying with **us**."  Turk Dep. (Def. Ex. 4) at 41 (emphasis added).  Defendants contend that Defendants' Exhibit 4 speaks for itself and that it is clear from the context of Mr. Kaplan's deposition testimony that his use of the word "us" referred to himself and other JDL members.

57. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  The fact that JDL Chairman Finberg's email was in fact distributed is plain from the face of the email.  *See* Def. Ex. 32 (Call to Action).  The email was plainly sent to a recipient at the e-mail address "Kimberlieqc@riseup.net" on January 30, 2006.  On the same date, Mr. Finberg sent out emails with identical text to, among others, Caren Phillips, Shaul Amer, Don Sable, Janet Lehr, and Marlene Young.  *See* Finberg emails (Def. Ex. 66) at FIN000096-98, FIN000099-101, FIN0000102-04, FIN0000118-120; FIN0000121-23.

58. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and does not require a response.

59. Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact or supporting his assertion that "JDL never planned to 'deceptively' register their table in the ICC Building under the name 'Palestinians Are People Too.'"  *See* Pl. Response Facts ¶ 59.  Indeed, Plaintiff actually concedes that "Robert Turk and James Nutting testified that [JDL member] George Haas was in charge of reserving the table [for

16

the JDL]," that "they figured that if they registered a table under the name JDL, they would be denied," and that he therefore used the name "Palestinians Are People Too." *Id*.

60. Plaintiff admits this paragraph; therefore, no response is required.

61. Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact. To the contrary, Mr. Harrison unequivocally testified that "the general nature of our conversation was the fact that [Plaintiff] would be attending, and he -- he indicated that he would be attending to protest. And **he was gathering information from me on procedures that we had in place for protestors** and that's what we discussed . . . **our conversations were mainly centered around the protest and demonstration areas**." Harrison Dep. (Def. Ex. 6) at 10-12 (emphasis added). Defendants do not dispute that Mr. Harrison had "a number of conversations with [Plaintiff]" and also testified that the "general nature of our conversations were the upcoming Palestinian solidarity conference and the fact that Mr. Maniaci would be attending . . . to express his opposing views to the conference." *Id*. at 10.

62. Plaintiff admits this paragraph; therefore, no response is required.

63. Plaintiff admits this paragraph; therefore, no response is required.

64. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertion that "On February 18, 2006, William Maniaci was discouraged from attending the Conference, after he was removed from the campus by Metropolitan Police Officer Delisi." To the contrary, the uncontradicted evidence shows that Defendants made no effort to discourage or prohibit Plaintiff from registering for the Conference or from entering on to Georgetown's property to attend the Divestment Seminar. *See* Def. Ex. 1 (Maniaci Dep.) at 157-58. It was only after he became disruptive that Plaintiff was later directed

17

to leave Georgetown's campus and escorted off the campus by Sear gent De Lisi.  *See* DeLisi Dep. (Def. Ex. 55) at 37-39; 45-46.

65. Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Indeed, Plaintiff concedes that "he had met Ms. Carrie Devorah" on "the street outside a kosher deli in Washington, D.C."  *See* Pl. Response Facts ¶ 65.  Moreover, Ms. Devorah's uncontradicted testimony indicates that Plaintiff and other JDL members accompanying him told her "they were going to be holding a press conference." Devorah Dep. (Ex. 34) at 33.

66. Defendants do not dispute that Mr. Kaplan testified that he could not recall whether he interviewed Plaintiff again after speaking with him during the weekend of January 17-19, 2006. It is undisputed, however, that Plaintiff gave Mr. Kaplan an interview regarding the events of the PSM Conference, provided him with photographs of his alleged injuries, and informed him of his planned lawsuit prior to March 17, 2006.  *See* Kaplan  Dep. (Def. Ex. 27) at 167-73; *The Divestment Conference at Georgetown* (Def. Ex. 28) ("Maniaci has filed a multi-million dollar lawsuit against Georgetown").  And in any event, Plaintiff concedes that Mr. Kaplan testified "that he had an 'exclusive'" on Plaintiff's complaint and that Kaplan's article was published before Plaintiff filed his complaint with this Court.  *See* Pl. Response Facts ¶ 66-67.  Plaintiff's denial that this fact is material is argument and does not require a response.

67. Plaintiff admits this paragraph; therefore, no response is required.

68. Plaintiff admits this paragraph; therefore, no response is required.  Defendants do not dispute that Mr. Kaplan's article reflects his opinions.  Plaintiff's assertion that the quoted portion of Mr. Kaplan's deposition testimony "ha[s] no bearing on this lawsuit" and Plaintiff's

"deni[al] that this fact is 'material'" are argument and also do not require a response.  *See* Pl.

Response Facts ¶ 68.

69. Plaintiff admits this paragraph; therefore, no response is required.  Defendants do not

dispute that Mr. Finberg's article reflects his opinions.  Plaintiff's assertion that the quoted

portions of Mr. Finberg's articles "ha[s] no bearing on this lawsuit" and Plaintiff's "deni[al]

that this fact is 'material'" are argument and do not require a response.  *See* Pl. Response Facts ¶ 69.

Plaintiff's assertion that "Mr. Maniaci did not disrupt anything" is undermined by the

irrefutable evidence in the record and by Plaintiff's own concession.  *See* Def. Statement of

Material Facts Not In Dispute ("Facts") ¶ 96-116, 176-84; Pl. Mem. in Opp'n to Def. Motion for

Summ. J. ("Pl. Opp'n") at 13 (conceding that Plaintiff "**did interrupt** the question and answer

period of a particular part of the conference) (emphasis added); *Webster's II New College

Dictionary* 335 (3d ed. 2005) (defining "disrupt" as "to **interrupt** or impede the usual course or

harmony of") (emphasis added).

70. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial.  That Mr. Levinson's sympathies lie with the JDL is plain from the face of

his article.  He refers to the JDL as "Civilization's defenders" and lauds their "overwhelming and

decisive public relations victory over the Palestine Solidarity Movement."  Def. Ex. 38

(*Palestine Solidarity Movement Routed at Georgetown*) at GTN001062.

Plaintiff's assertions that he "objects to the Defendants' use of the text of their own

question to imply a fact" and his "deni[al] that this fact is 'material'" are argument and do not

require a response.  Pl. Response Facts ¶ 70.  In any event, the text of the question asked by

Defendants' counsel is a direct quote from Mr. Levinson's article.

19

71. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff's denial that this fact is material is argument and also does not require a response.

72. Plaintiff admits this paragraph; therefore, no response is required.

73. Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Indeed, Plaintiff's response that "the student group **then** pays the University" demonstrates that he concedes the registration fee was paid to and collected by SJP, the student group that invited the PSM to hold the Conference, and not Georgetown.  *See* Pl. Response Facts ¶ 73 (emphasis added).  Furthermore, contrary to Plaintiff's assertion, Mr. Olson did not testify that "the student group then pays the University" the ten dollar registration fee, nor is there any other evidence in the record supporting this assertion.  *Id.* Mr. Olson simply confirmed that the SJP paid a "rental fee" or a "clean up fee" to Georgetown but could not speak to the "exact distribution of the fee money."  Def. Ex. 5 (Olson Dep.) at 14-15.

74. Plaintiff admits this paragraph; therefore, no response is required.

75. Plaintiff admits this paragraph; therefore, no response is required.

76. Plaintiff admits this paragraph; therefore, no response is required.

77. Plaintiff admits this paragraph; therefore, no response is required.

78. Plaintiff admits this paragraph; therefore, no response is required.

79. Plaintiff purports to deny this paragraph, but instead takes issue with Defendants' labeling of Exhibits 43, 44A and 45.  Plaintiff's assertion is argument and does not require a response.  In any event, all three exhibits are clearly labeled as separate video files on the

compact disc provided to Plaintiff's counsel and plainly correspond to Exhibits 43-45 on Defendants' Index of Exhibits. Moreover, Plaintiffs' counsel could easily have sought clarification regarding the exhibit numbers from Defendants' counsel at any point during the seven weeks that passed between the date when Defendants filed their motion for summary judgment and the date when Plaintiff re-filed his opposition papers. And in any event, the labeling of exhibits is not a jury issue.

80. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. The letters attached as Defendants' Exhibits 67, and 68, clearly demonstrate that Defendants' counsel identified the sources of all three video recordings when they were originally produced to Plaintiff's counsel. Plaintiff is in no position to challenge these video recordings as he has himself submitted the two of the same recordings (albeit without any explanation as to where they came from) as Plaintiff's Exhibits 17-18. Notably, Plaintiff has **without acknowledgement or explanation**, spliced together the Quest Video and Al Aribiya ("AA") Videos and presented them to the Court as a single clip in Exhibit 19. *See* Pl. Ex. 19 at 19:08:34:11 (at this point the video clip fades from the Quest Video into the rear-view angle depicted in the AA video and the timestamp from the Quest Video is no longer present on the screen).

81. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Thus, Mr. Olson's sworn declaration stands unrebutted. *See* Ex. 25 (Olson Decl.) ¶ 15. Moreover, Plaintiff actually concedes that the video recordings "depict the events that transpired on February 18, 2006." Pl. Response Facts ¶ 81. Finally, Plaintiff's unsupported assertion that "none of the videos were close enough or have the quality to depict what happened to William Maniaci," *id*., is flatly inconsistent with his position that the video

21

recordings "of the exchange in [Gaston Hall] . . . **<u>clearly show</u>** that Georgetown failed to request him to leave before Vice President Olson ordered him to be taken away,"  Pl. Opp'n at 17 (emphasis added).

82. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Indeed, while Plaintiff takes issue with Defendants' transcript, Plaintiff has submitted his own transcriptions of the video recordings throughout his response to Defendants statement of facts without any explanation as to how or by whom those transcriptions were created.  *See* Pl. Response Statement of Facts  ¶ O-BB.  Defendants never contended that a court reporter was present at the PSM Conference; Defendants' Exhibit 47 was simply included as a demonstrative aid to assist the Court's review of the video recordings in evidence. Nevertheless, Defendants now submit additional transcripts of the Quest and SJP videos that have been created and certified by a court reporter.  *See* Def. Exs. 69A (Certified Quest Video Tr.) and 69B (Certified SJP Video Tr.).  There are no material differences between these transcripts and Defendants' Exhibit 47.

83. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  *See* also Paragraph 82, *supra*.

84. Plaintiff admits this paragraph; therefore, no response is required.

85. Plaintiff admits this paragraph; therefore, no response is required.

86. Plaintiff admits this paragraph; therefore, no response is required.

87. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Instead, Plaintiff quibbles with the use of the word "discussion."

Plaintiff's assertion that the panel discussion "was actually a lecture by each of the four panelist [sic]" is argument and does not require a response.

88. Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Defendants do not dispute that Mr. Olson made the following statement after the panel discussion.

> Just briefly, this begins our designated question and answer period, during which you may ask questions and engage in dialogue. **Please be sure to phrase your comments in the form of a question. In the interest of time we ask each person be concise and ask only one question**. Thank you.

Ex. 44A (Quest Video) at 18:56:00-18:56:20; *see also* Def. Ex. 47 (Quest Video Tr.) at 2 (emphasis added); Def. Ex. 69A (Certified Quest Video Tr.) at 2 (emphasis added).

89. Plaintiff admits this paragraph; therefore, no response is required.

90.  Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Plaintiff's unsupported assertion that "there is no testimony as to why the panelists change the format and that they would be addressing the questions in the order they were received."  Pl. Response Facts ¶ 89.  To the contrary, Plaintiff himself testified that "I think that there was more people than they expected that wanted to ask questions.  So that's when they said, okay, we're going to limit you to one question apiece.  Ask your question.  Have a seat. And the panel will address your questions in the order in which they were asked."  Def. Ex. 1 (Maniaci Dep.) at 241.

91. Plaintiff admits this paragraph; therefore, no response is required.

92. Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff's assertion that he "is interrupted in the middle of his question by Mr. Youmans" is false.  It was only after Plaintiff had already asked "I'd like to

know your position on suicide bombing.  If you would renounce suicide bombing" and began

presenting his own views on terrorism, stating "given that that is terrorism, and no one can deny

blowing himself up on a bus and killing innocents is not terrorism," rather than phrasing his

comments in the form of a question that moderator Youmans admonished him "Okay, I think

you have made your question clear."  Def. Ex. 44A (Quest Video) at 19:01:25-19:02:05; *see also*

Def. Ex. 47 (Quest Video Tr.) at 4; Def. Ex. 69A (Certified Quest Video Tr.) at 9.

93. Plaintiff admits this paragraph; therefore, no response is required.

94. Plaintiff admits this paragraph; therefore, no response is required.

95. Plaintiff admits this paragraph; therefore, no response is required.  Plaintiff purports to

deny the footnote, yet fails to provide any citation to the record supporting his denial.  Indeed,

Plaintiff concedes that he testified that "Sue Blackwell supports the use of suicide bombings and

violence against Israeli civilians, and that's terrorism."  *See* Pl. Response Facts ¶ 95.  Plaintiff

also testified as follows:

> Q   Let me read that.  You wrote this. You wrote, quote, the terrorists who will be
> addressing the public during the three days of the Palestinian Solidarity
> conference at Georgetown University, end quote.  Which terrorists were you
> referring to?
>
> A   **It's my belief that the people who were preaching divestment from Israel
> were supporting terrorism**.
>
> Q   Well, you refer to them as terrorists.
>
> A   If you support terrorism, you're a terrorist.
>
> Q   **Okay.  So the people at the conference who were supporting divestment
> from Israel were, in your view, terrorists?**
>
> A   **Yes**.  The speakers, in my view, were terrorists insofar as the definition of a
> terrorist can -- doesn't necessarily have to be someone who is violent.  Terrorism
> can be psychological.
>
> Q   Okay.  But in your view, applying your definition, for example, **Sue
> Blackwell, one of the speakers at the conference you attended, is a terrorist**.

24

A   **Sue Blackwell supported the -- supports the use of suicide bombings and violence against Israeli civilians, and that's terrorism**.

Q   Let's just talk about her opinion with respect to divestment, okay.

A   **No.  I look at her as an individual and what she supports.  If she supports terrorists, she's a terrorist**.

Def. Ex. 1 (Maniaci Dep.) at 178-80 (emphasis added).  Accordingly there can be no genuine dispute that Plaintiff testified at his deposition that in his view, Dr. Blackwell, like any speaker who supported divestment from Israel, was a terrorist.

96. Plaintiff admits this paragraph; therefore, no response is required.

97. Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial, other than his own self-serving testimony.  Plaintiff's assertion (repeated verbatim with respect to Paragraphs 98 and 99) is demonstrably false.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Plaintiff cut Mr. Youmans off, shouting from his seat: "You didn't answer my question."  Def. Ex. 44A (Quest Video) at 19:07:27-19:07:29; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 15; Def. Ex. 29 (Finberg Dep.) at 121-22.

98. Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff's assertion is demonstrably false.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Mr. Youmans began to respond: "Thank you . . ." but was again interrupted by Plaintiff.  Def. Ex. 44A (Quest Video) at 19:07:27-19:07:31; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 15.

25

99.  Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial, other than his own self-serving testimony.  Plaintiff's assertion is demonstrably false.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Plaintiff shouted: "I asked for a policy statement from you."  Def. Ex. 44A (Quest Video) at 19:07:27-19:07:35; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 15.

100.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Mr. Youmans tried to respond again, barely managing to get out the words, "Would you . . ." before he was interrupted for the third time by the Plaintiff.  Def. Ex. 44A (Quest Video) at 19:07:27-19:07:35; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 15.

101.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Plaintiff again interrupted for the fourth time, shouting, "You haven't answered my question."  Def. Ex. 44A (Quest Video) at 19:07:27-19:07:35; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 15.

102.    Plaintiff admits this paragraph; therefore, no response is required.

103.    Plaintiff admits this paragraph; therefore, no response is required.

104.    Plaintiff admits this paragraph; therefore, no response is required.

105.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings. Accordingly, there can be no genuine dispute that before the next person in line could speak, Plaintiff interrupted for a fifth time, shouting: "You didn't answer my question." Def. Ex. 44A (Quest Video) at 19:07:41-19:07:44; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Video Tr.) at 15.

106.    Plaintiff admits this paragraph; therefore, no response is required.

107.    Plaintiff admits this paragraph; therefore, no response is required.

108.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings. Accordingly, there can be no genuine dispute that as soon as Noelle had finished asking her question, and the next questioner, Rabbi Weiss (a member of the Neteuri Karta sect) looked at the panel and opened his mouth to speak, Plaintiff interjected for the sixth time, shouting from his seat: "Are you for or against . . ."  Def. Ex. 44A (Quest Video) at 19:08:08-19:08:09; *see also* Def. Ex. 47 (Quest Video Tr.) at 6; Def. Ex. 69A (Certified Quest Video Tr.) at 16.

109.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings. Accordingly, there can be no genuine dispute that Mr. Youmans responded: "**I'm sorry sir,**

27

**please don't interrupt.  You've already asked your question**.  Thank you."  Def. Ex. 44A

(Quest Video) at 19:08:08-19:08:12; *see also* Def. Ex. 47 (Quest Video Tr.) at 6-7 (emphasis

added); Def. Ex. 69A (Certified Quest Video Tr.) at 16 (emphasis added).

110.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to

the record supporting his denial.  The timing of Plaintiff's multiple interjections and his

exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.

Accordingly, there can be no genuine dispute that Plaintiff continued to engage Mr. Youmans,

interjecting for a seventh time, and preventing Rabbi Weiss from speaking by shouting: "But you

didn't answer my question."  Def. Ex. 44A (Quest Video) at 19:08:11-19:08:14; *see also* Def.

Ex. 47 (Quest Video Tr.) at 7; Def. Ex. 69A (Certified Quest Video Tr.) at 16.

111.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to

the record supporting his denial.  The timing of Plaintiff's multiple interjections and his

exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.

Accordingly, there can be no genuine dispute that Mr. Youmans responded: "**She did, she**

**addressed your question**."  Def. Ex. 44A (Quest Video) at 19:08:14-19:08:15; *see also* Def. Ex.

47 (Quest Video Tr.) at 7 (emphasis added); Def. Ex. 69A (Certified Quest Video Tr.) at 16

(emphasis added).

112.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to

the record supporting his denial.  The timing of Plaintiff's multiple interjections and his

exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.

Accordingly, there can be no genuine dispute that Plaintiff was not dissuaded, but instead

shouted: "No, I asked for your policy statement and she gave a personal . . ."  Def. Ex. 44A

(Quest Video) at 19:08:15-19:08:19; *see also* Def. Ex. 47 (Quest Video Tr.) at 7; Def. Ex. 69A (Certified Quest Video Tr.) at 16.

113.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  Accordingly, there can be no genuine dispute that Mr. Youmans began to respond: "There is no policy, I don't know . . ."  Def. Ex. 44A (Quest Video) at 19:08:15-19:08:20; *see also* Def. Ex. 47 (Quest Video Tr.) at 7; Def. Ex. 69A (Certified Quest Video Tr.) at 16.

114.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  *See* Paragraphs 96-113, *supra*.

115.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  The timing of Plaintiff's multiple interjections and his exchange with Messrs. Youmans and Olson is plainly shown in the video recordings.  *See* Paragraphs 96-113, *supra*.

116.    Plaintiff admits this paragraph; therefore, no response is required

117.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial or supporting his conclusory assertion that "this fact can not be substantiated by the record including the videos."  *See* Pl. Response Facts ¶ 117.  Accordingly, Defendants' assertions stand unrebutted and there can be no genuine dispute that Mr. Olson did not instruct anyone to use physical force to remove Plaintiff nor did he ask anyone to arrest

Plaintiff or take him into custody.  Def. Ex. 44A (Quest Video) at 19:08:20-19:08:28; *see also* Def. Ex. 47 (Quest Video Tr.) at 7; Def. Ex. 69A (Certified Quest Video Tr.) at 16-17.

118.    Plaintiff admits this paragraph; therefore, no response is required.

119.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial or supporting his conclusory assertion that "this fact can not be substantiated by the record."  *See* Pl. Response Facts ¶ 119.  Accordingly, Defendants' assertions stand unrebutted and there can be no genuine dispute that Plaintiff ignored and disobeyed Mr. Olson's instruction to leave the auditorium, instead remaining seated.  He was uncooperative and made no effort to get up.  *See* Def. Ex. 43 (AA Video) at 00:00:15-00:00:45; Def. Ex. 44A (Quest Video) at 19:08:32-19:08:41.

120.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff's unsupported assertions that "[t]he proximity of Finberg and Nutting can not be substantiated by the record" and that "[t]he videos do not show either Mr. Finberg nor Mr. Nutting interfering at any time" are false.  *See* Pl. Response Facts ¶ 120.  The Quest Video and photographs produced by Plaintiff clearly show that Mr. Finberg and Mr. Nutting were in close proximity to the Plaintiff and the two Safety Officers.  Def. Ex. 44A (Quest Video) at 19:08:30-19:08:37; Def. Ex 48 (Photograph of Finberg and Nutting moving to the aisle in Gaston Hall).  In addition, Mr. Finberg testified as follows:

Q.    Do you recall that the administrator who was on the stage asked that the staff escort Mr. Maniaci from the room?

A.  Yes.

Q.  And where were you at that point in time?

A.  I was right at the mike, next to the microphone, I think, interacting with the man from  Neturei Karta.

Def. Ex. 29 (Finberg Dep.) at 124.  Mr. Finberg also testified that "I was right next to them."  *Id.*

at 126.  Similarly, Mr. Nutting testified that "I stood right by -- by where [Plaintiff] was seated"

when he saw the Safety Officers approaching the Plaintiff.  Def. Ex. 71 (Nutting Dep.) at 170.

121.    Plaintiff admits this paragraph; therefore, no response is required.

122.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial apart from his own self-serving testimony.  In his response, Plaintiff asserts

three inconsistent positions, none of which is sufficient to create a genuine issue of material fact.

Plaintiff asserts that (a) Officer Eddy spoke to Plaintiff, but "there is absolutely no possible way

of interpreting exactly what the Officer and Maniaci state to one another on the video recording",

(b) "he does not remember the officer saying anything to him," and (c) that nobody "ask[ed] him

to leave the room."  Pl. Response Facts ¶ 122.  The first two assertions are directly contradictory.

Plaintiff's assertions are also thoroughly discredited by the irrefutable video evidence and

substantial deposition testimony.  Mr. Olson clearly asked Plaintiff to leave by addressing him:

"Sir, you do not have the opportunity to speak any longer.  I would like to ask our staff to escort

this gentleman from the room."  Def. Ex. 44A (Quest Video) at 19:08:20-19:08:28; *see also* Def.

Ex. 47 (Quest Video Tr.) at 7; Def. Ex. 69A (Certified Quest Video Tr.) at 16-17.

In addition, Mr. Eddy testified that he identified himself as a "university official" and

"told [Plaintiff] that he would have to leave the hall" but that Plaintiff "refused" and remained

seated.  Def. Ex. 8 (Eddy Dep.) at 25-26, 36; Def. Ex. 9 (Salley Decl.) ¶ 11.  The video

recordings corroborate Eddy's testimony as they show Safety Officer Eddy bending over

Plaintiff for at least 25 seconds with his head and lips moving prior to any attempt to physically

move Plaintiff.   Def. Ex. 44A (Quest Video) at 19:08:50-19:09:15.  During that time, Plaintiff

makes no effort to get up and Plaintiff's head can be seen turned up and looking at Eddy.  Def.

Ex. 43 (AA Video) at 00:15-00:50.  Finally, MPD Lt. Michael Smith also corroborates what is seen on the video.

> They walked up, there was conversation going back and forth between Mr. Maniaci and the DPS officers.  And the DPS officers, everybody had their voices down really low, so I was in the back and couldn't hear exactly what was being said.  But it sounded like something to the effect of, well, you know, you have got to leave, and Mr. Maniaci, well, all I wanted them to do was answer my questions.

Smith Dep. (Def. Ex. 54) at 160-61.

123.    To the extent that Plaintiff admits that "Mr. Finberg was momentarily in the aisle," no response is required.  Plaintiff fails to provide any specific citation to the record supporting his assertion that "[t]here is no evidence as to any intention on Mr. Finberg's part [sic] prevent Rabbi Weiss from speaking."  Pl. Response Facts ¶ 123.  **Indeed, as Plaintiff <u>admits</u> in the very next paragraph, Mr. Finberg has unambiguously testified that he both intended to and in fact did block Rabbi Weiss's view of the panel and prevent him from speaking**.

> Q.   Now, the Neturei Karta person, is that -- he's known as Rabbi David Weiss or Dovid Weiss?
>
> A.   I think so.
>
> Q.   Had you ever met him before or were you familiar with him?
>
> A.   I've seen him.
>
> Q.   And what did you do when he got up to ask a question?
>
> A.   **I stood in front of him.  I knew he couldn't use the microphone because it was the sabbath.**
>
> Q.   **And why did you stand in front of him?**
>
> A.   **Because I don't like him and I didn't think he should be there and I think he's dangerous to my people.**
>
> Q.   And did you say anything to him?
>
> A.   **I said, I don't like you.  He said, Get out of my way.  I said, No.  And nobody could see him.  It was beautiful.  It was nonviolent.**
>
> Q.   And then eventually what happened?

A. **Eventually I got out of his way**. And that, in my mind, all sort of blends together in what – the Maniaci event, incident happened very quickly right there, but after. That's why I was so close to Mr. Maniaci when he was dragged out. **I was standing next to the microphone in front of this little Capuchin. And he said, Help, this man is blocking me. What are you talking about? I'm just standing here. He'd move, I'd move, he'd move, I'd move. I said, Go ahead, say what you need to say and I started walking away, but I stayed right there.**

Finberg Dep. (Def. Ex. 29) at 115-16 (emphasis added).

124.     Plaintiff admits this paragraph; therefore, no response is required.

125.     Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial apart from his own self-serving testimony. Plaintiff's unsupported assertions that "the two campus police officers violently grabbed [Plaintiff] and jerked him from his seat" and that Plaintiff "did not resist" at all are demonstrably false. As the irrefutable video evidence demonstrates, after it became apparent that Plaintiff would not cooperate, would not voluntarily leave, and would not alight from his seat, Safety Officers Eddy and Salley carefully lifted Plaintiff up out of his seat, gripping him under his armpits, and carried him into the aisle, a distance of less than three feet from his seat. *See* Def. Ex. 43 (AA Video) at 00:00:45-00:00:55; Def. Ex. 44A (Quest Video) at 19:09:12-19:09:38; Def. Ex. 8 (Eddy Dep. at 26, 36); Def. Ex. 9 (Salley Decl.) ¶¶ 12-13.

At first the Safety Officers tried to stand Plaintiff up in the aisle, but Plaintiff continued to resist by refusing to stand up and instead going limp, forcing them to carry him from the auditorium. Def. Ex. 8 (Eddy Dep.) at 37; Def. Ex. 7 (Morrell Dep.) at 29-30; Def. Ex. 9 (Salley Decl.) ¶ 13; Def. Ex. 44A (Quest Video) at 19:09:12-19:09:38; Def. Ex. 43 (AA Video) at 00:00:45-00:01:00. Notably, just moments before, Plaintiff stood in the aisle unassisted for over 5½ minutes waiting to ask his question. *See* Def. Ex. 44A (Quest Video) at 18:56:30-19:02:04.

126.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial apart from his own self-serving testimony and the testimony of his loyal best friend, *see* Def. Ex. 70 (Turk Dep.) at 10, and JDL colleague Robert Turk.  Both Plaintiff's unsupported assertions that "as the officers grabbed [him] he felt a blow to his right side, taking his breath away and causing him to gasp for air" and that he "had the wind knocked out of him," *see* Pl. Response Facts ¶ 126, and Mr. Turk's testimony regarding the incident are demonstrably false as shown by two video recordings which depict the relevant events from two different angles.

Contrary to Plaintiff's self-serving testimony, the video recordings show how Officers Eddy and Salley calmly approached Plaintiff, leaned over to speak to him, and then after several moments had passed, carefully lifted him from his seat.  *See* Def. Ex. 44A (Quest Video) 19:09:00-19:09:38; Def. Ex. 43 (AA Video) at 00:00:14-00:01:14.  The video recordings similarly demonstrate that Mr. Turk's testimony that Plaintiff was "kicked" in the "side of the chest" as he lay "on his back on the ground" in the area "between the seats" is false.  Def. Ex. 70 (Turk Dep.) at 147-49.  To the contrary, the video recordings clearly demonstrate that Plaintiff was lifted out of this seat into the aisle and never fell down in the area between the seats.  *See* Def. Ex. 44A (Quest Video) at 19:09:00-19:09:38; Def. Ex. 43 (AA Video) at 00:00:14-00:01:14.  Indeed, the video recordings show that Plaintiff never hit the floor in the aisle either, but was carefully carried out of Gaston Hall.  *See* Def. Ex. 44A (Quest Video) at 19:09:00-19:09:38; Def. Ex. 43 (AA Video) at 00:00:14-00:01:14.

Furthermore, the video recordings show that when the Safety Officers lifted Plaintiff from his seat, Mr. Turk was in the front of the room, separated from Plaintiff by at least three rows of seats.  *See* Def. 43 (AA Video) at 00:00:45-00:00:52.  JDL member Keith Bailey and

JDL Chairman Matthew Finberg, who were much closer to Plaintiff and the officers, *see* Paragraph 120, *supra*, both testified that the officers did not kick or knee Plaintiff, *see id*; Def. Ex. 50 (Bailey Dep.) at 149-50; Def. Ex. 29 (Finberg Dep.) at 126-27.

Messrs. Bailey and Finberg's testimony was corroborated by MPD Lt. Michael Smith, another JDL sympathizer, who was also present at the Divestment Seminar. Def. Ex. 54 (Smith Dep.) at 132. Lt. Smith, a seasoned police investigator with extensive training regarding the use of force, also saw the Safety Officers carry Plaintiff from Gaston Hall. *Id*. at 12-13, 29-30, 159-60. Lt. Smith testified that he did not see Plaintiff fall on the ground nor did he see the officers punch, kick or strike Plaintiff. *Id*. at 161-63.

127.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. His response to Paragraph 127, which identical to his response to Paragraph 126, fails to address any portion of Defendants' assertion that Plaintiff weight approximately 220 pounds and that he used his own dead weight to resist the officers' efforts to remove him from the auditorium. *See* Def. Ex. 52 (Medical Records) at VA000441, VA000445; Def. Ex. 44A (Quest Video) at 19:09:00-19:09:38; Def. Ex. 43 (AA Video) at 00:00:14-00:01:14. Accordingly, the video recordings and medical records stand unrebutted.

128.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. His response to Paragraph 128, which identical to his response to Paragraph 126, fails to address any portion of Defendants' assertion that Plaintiff continued to resist by placing his cane between Safety Officer Salley's legs as he was carried out of the auditorium and that Plaintiff did this in order to trip Salley. Accordingly Safety Officer Salley's declaration and the video recordings stand unrebutted.

129.    Plaintiff admits this paragraph; therefore, no response is required.

130.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial apart from his own self-serving testimony.  Plaintiff's unsupported assertion that he was "lifted off the floor, thrown through the doors into the hallway on the concrete floor" and that "he against hit his head on the floor" are demonstrably false.  Indeed, Plaintiff testified at his deposition that he "[didn't] know if [he] was [thrown through the doors] or not."  Def. Ex. 1 (Maniaci Dep.) at 268.  Thus, Plaintiff's assertion is undermined by his own deposition testimony.  Furthermore, the video recordings show from two angles that an unidentified individual wearing a scarf and a dark coat held the auditorium doors open while the Safety Officers carefully carried Plaintiff into the foyer outside.  *See* Def. Ex. 44A (Quest Video) at 19:09:33-19:09:42; Def. Ex. 43 (AA Video) at 00:00:14-00:01:14.  In the foyer, Plaintiff was gently placed on the floor.  *See* Def. Ex. 8 (Eddy Dep.) at 36; Def. Ex. 29 (Finberg Dep.) at 135 (the officers sat Plaintiff down, he was not thrown to the ground); Def. Ex. 7 (Morell Dep.) at 29-30 (the officers "gently deposit[ed] Plaintiff on the floor"); Def. Ex. 49 (Smulson Decl.) at ¶ 7 (the officers "gently placed" Plaintiff on the floor and did not have "any other physical contact" with Plaintiff).

131.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial apart from his own self-serving testimony.  Plaintiff's unsupported assertion that he was "not placed gently on the floor" is false.  *See* Paragraph 130, supra.

132.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or his assertions that the Safety Officers "were wearing uniforms of the Georgetown special police officers" and "were working for Georgetown University in their capacity as a [sic] special police officer.  Pl. Response Facts ¶ 132.  While Defendants do not dispute that the Safety Officers were wearing their University uniforms on February 18, 2006,

there is no evidence in the record that the uniforms identified them as "Georgetown **special police officers**." *Id*. (emphasis added). Plaintiff's conclusory assertion that they were in attendance as special police officers" is factually unsupported argument and states a legal conclusion that requires no response and which Defendants have addressed in their opening memorandum and reply brief. *See* Def. Mem. at 20-26; Def. Reply at 11-13. Defendants do not dispute that the Safety Officers briefly placed their hands on Plaintiff in order to carry him out of Gaston Hall after he refused to stand up and leave on his own. *See* Paragraphs 125-131, *supra*. As explained in Paragraphs 125-26, *supra*, there is no genuine dispute that the Safety Officers did not "grab[] Plaintiff from his seat."

133.    Plaintiff admits this paragraph; therefore, no response is required.

134.    Plaintiff purports to deny this paragraph, yet fails to support his denials and assertions as explained in Paragraphs 92 through 133. There can be no genuine dispute as to the factual assertions expressed in Paragraph 134 and subparagraphs a through i of Defendant's Statement of Material Facts Not In Dispute.

135.    Plaintiff purports to deny this paragraph, yet fails to support his denials and assertions as explained in Paragraphs 136-139. Accordingly, there can be no genuine dispute that Plaintiff's allegations are contradicted by the testimony of many witnesses, including some of his JDL colleagues.

136.    To the extent that Plaintiff admits that Mr. Bailey testified that he did not see the Safety Officers punch or kick Plaintiff and did not see Plaintiff's head hit any objects as he was carried out, no response is required.

Plaintiff fails to provide any citation to the record supporting his assertion that "Mr. Bailey was not in a vantage point in which he could see if Mr. Maniaci was kicked or punched." *See* Pl. Response Facts ¶ 136.  To the contrary, Mr. Bailey testified that he was sitting in the seat next to Plaintiff when the Safety Officers approached him.

> Q.   Okay.  Well, we will walk through exactly how they got out, but just at the time when they came to Mr. Maniaci at the seat and lifted him up, you were next -- you were in the seat next to him, right?
>
> A.   Yes, I was.

Bailey Dep. (Def. Ex. 50) at 146-47.

137.   Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertion that "Mr. Finberg simply testified that he did not see it happen, he did not testify that it did not happen."  Pl. Response Facts ¶ 137.  To the contrary, Mr. Finberg unequivocally testified that the Safety Officers did not punch, kick or knee Plaintiff.

> Q.   You said that they went to lift him by his shoulder.  Prior to doing that, did they -- did you see a campus security guard try to punch Mr. Maniaci?
>
> A.   No.
>
> Q.   Did you see a campus security guard try to kick or knee Mr. Maniaci?
>
> A.   No.

Finberg Dep. (Ex. 29) at 126-27.

> Q.   **Were they punching him or kicking him as they took him out?**
>
> A.   **No.  No, definitely not, nothing of the sort**.
>
> Q.   Did his head hit any objects that you could see, like seats?
>
> A.   On the way out?
>
> Q.   Yeah.
>
> A.   No.

*Id.* at 134 (emphasis added).  Defendants do not dispute that Mr. Finberg stood in front of Rabbi Weiss in the aisle.

138.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial or his assertions that "Mr. Smith was not in close proximity to Maniaci at the time he was grabbed by the officers" and that "Mr. Smith never testified that he was close enough to see it happen or that it simply did not happen."  Pl. Response Facts ¶ 138.

139.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Indeed, Plaintiff actually concedes that Mr. Smulson "was in the hallway at the time of the occurrence."  Pl. Response Facts ¶ 139.  Accordingly there is no genuine dispute that the Safety Officers did not "pounce" upon, strike, or knee Plaintiff in the hallway.  Defendants do not dispute that Mr. Smulson was not inside Gaston Hall when the Safety Officers carried Plaintiff out.

140.    Plaintiff admits this paragraph; therefore, no response is required.

141.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Although he claims that his bruises "are documented by . . . his deposition," he fails to indicate which portion of his 386-page deposition transcript he refers to.

Furthermore, not one of the other exhibits that Plaintiff has cited, the photographs in Plaintiff's Exhibit 13, the medical records in Plaintiff's Exhibit 12 or Dr. Gillern's deposition testimony in Plaintiff's Exhibit 15, demonstrate that Plaintiff had visible bruises when he stood up in the foyer of the Healy Building on February 18, 2006.  It is undisputed that none of the photographs in Plaintiff's Exhibit 13 were taken on Georgetown's campus on February 18, 2006 and that they were undoubtedly taken days later.  Plaintiff recalled that they were taken by Ms.

Devorah in Plaintiff's counsel's office on February 20, 2006, the Monday after the PSM

Conference, and perhaps one photograph by Mr. Turk at Walter Reed on February 19, 2006. *See*

Pl. Ex. 14 (Maniaci Dep.) at 341-46.

It is also undisputed that Dr. Gillern did not examine Plaintiff on Georgetown's campus

on February 18, 2006. The uncontradicted record shows that Dr. Gillern examined Plaintiff on

Sunday February 19, 2006, and that she testified that she did not remember seeing any bruising

on Plaintiff and that she did not record any bruising in her notes. *See* Pl. Ex. 15 at 53-54. Dr.

Gillern also testified that she did not recall seeing, and accordingly did not record, any of the

bruising or abrasions depicted in the photographs that are part of Plaintiff's Exhibit 13. *Id*. at 55-

61. Defendants do not dispute that Plaintiff's cane was bent during the process of carrying him

out of Gaston Hall.

142.    Plaintiff admits this paragraph; therefore, no response is required.

143.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial or supporting his assertion that "Mr. Olson and Mr. Morrell did not actually

inform Plaintiff [that due to his violation of Georgetown's Speech and Expression Policy,] he

was 'no longer welcome to attend the other sessions at [the] Conference.'" Pl. Response Facts ¶

143. Indeed, Plaintiff actually concedes that Messrs. Olson and Morrell's "testimony indicates

that they spoke about it." *Id*. And contrary to Plaintiff's assertion, Mr. Olson actually testified

that "to the best of my knowledge, Mr. Morell spoke with him." Def. Ex. 5 (Olson Dep.) at 43.

144.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial. Defendants do not dispute the accuracy of Plaintiff's quotation to his

deposition transcript. Nevertheless, upon reading the complete exchange, reproduced below, it is

clear that Plaintiff's testimony substantiates Defendants' assertion that Mr. Morrell spoke with

Plaintiff before he left the Healy Building.

> A    I don't know.  I was pretty unsteady.  And Bob helped me up, helped me to
> my feet.  Somebody came over and talked to us.  A university representative.
> And I don't remember what was said.  But I know that we said we were leaving.
> And we went -- took the elevator downstairs and went out the front door.  I was
> helped by Bob Turk.
>
> Q    So somebody from the university spoke to you but you don't recall who it
> was.
>
> A    It was a university suit.  One of the people that was the administrators that
> was --
>
> Q    It wasn't Mr. Olson, though?
>
> A    I don't know.

 Def. Ex. 1 (Maniaci Dep.) at 289-90.  In addition, Plaintiff's own Second Amended

Complaint alleges that, before he went to the ICC "University official approached him

and told him to leave and walked with him out to the main entrance."  Second Amended

Compl. ("Compl.") ¶ 5.  Accordingly, there can be no genuine dispute that Mr. Morrell

approached Plaintiff and asked him to leave or that plaintiff was told that he was banned for

violating Georgetown's Speech and Expression Policy.

145.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial.  *See* Paragraph 144, *supra*.

146.    Plaintiff admits this paragraph; therefore, no response is required.

147.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial.  Accordingly, there can be no genuine dispute that Plaintiff disregarded

Mr. Morrell's instruction to leave the campus and contrary to his own promise to comply, instead

walked over to the ICC another Georgetown building, where additional Conference workshops were proceeding.   *See* Paragraphs 144-45, *supra*.

148.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  *See* also Paragraph 58, *supra*.

149.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial aside from his own self-serving testimony.  Moreover, Plaintiff actually concedes that Mr. Harrison has testified that he walked along with Plaintiff over to the ICC building.  *See id*.

Although Plaintiff notes that "neither of the officers' reports state that Mr. Harrison walked with Maniaci to the ICC building," Pl. Response Facts ¶ 149, this fact is unremarkable as the uncontroverted evidence shows that neither of the officers were present at the time.  *See* Pl. Response Facts ¶ 213 (admitting that Salley was not present at the ICC); Def. Ex. 9 (Salley Decl.) at ¶¶ 16-17, 20; Pl. Ex. 6 (Eddy Incident Statement) at GTN 001725 ("Because DPS was addressing the ejection of the second individual, the tall thin man, contact was briefly lost with the first gentleman [Plaintiff]").

150.    Plaintiff purports to deny this paragraph, yet fails to provide offer any evidence sufficient to create a genuine issue as to a material fact.  Indeed, Plaintiff actually concedes that upon his arrival at the ICC, "Maniaci was told that he is not allowed to enter the ICC" and that he was "informed that he would not be allowed entry into the building until a university official ok['ed] this entry."  *See* Pl. Response Fact Statement ¶ 150.  Defendants do not dispute that Plaintiff was told that he was not being arrested.  *Id*.  Plaintiff's remaining assertions are thoroughly discredited by overwhelming deposition testimony including testimony of Plaintiff's JDL colleagues.  *See also* Paragraphs ¶¶ 152-55, *infra*.

42

JDL Chairman Finberg who walked with Plaintiff from Gaston Hall to the ICC, *see* Def.
Ex. 29 (Finberg Dep.) at 150, testified that the Safety Officers did not push Plaintiff against a
wall at the ICC.

Q.   Do you remember him -- campus security guards pushing Mr. Maniaci?

A.   **No, no.  He was treated very civilly after that**.

*Id*. at 151 (emphasis added).

JDL sympathizer and MPD Lieutenant Michael Smith testified that he observed the ICC
incident and that Plaintiff "leaned up against the wall with his back up against the wall and was
just standing there"; no officer pushed Plaintiff.  Def. Ex. 54 (Smith Dep.) at 191-92.

JDL member Jim Nutting, who trained at the Reserve Police Officers Academy and
works as a security officer for the Metropolitan Transit system in San Diego, has both training
and experience in the use of force.  Def. Ex. 2 (Nutting Dep.) at 7, 8, 21-22.  Mr. Nutting
testified that he did not see the officers push or grab Plaintiff at the ICC.

Q.   Were they grabbing Mr. Maniaci?

A.   I don't remember seeing that.

Q.   Were they pushing Mr. Maniaci?

A.   I didn't see that.  I don't remember it.

*Id*. at 223.  The unequivocal testimony of these three individuals further discredits Mr. Turks'
testimony which has already been shown to be false.  *See* Paragraph 126, *supra*.

Plaintiff was permitted to use the bathroom facilities after he threatened to wet a Safety
Officer's leg.  Def. Ex. 1 (Maniaci Dep.) at 299 ("I told them I was taking diuretics and I wasn't
bashful about getting his leg wet."); Def. Ex. 29 (Finberg Dep.) at 150 ("He wanted to go to the
bathroom, and they let him."); Def. Ex. 54 (Smith Dep.) at 193.

151.    Plaintiff admits this paragraph; therefore, no response is required.

152.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150-51, *supra* and Paragraphs 153-55, *infra*.

153.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150, *supra*.  Accordingly, there can be no genuine dispute that JDL Chairman Finberg testified that the Safety Officers did not push Plaintiff against a wall at the ICC.  *See id*; Finberg Dep (Ex. 29) at 151.

154.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150, *supra*.  Accordingly, there can be no genuine dispute that MPD Lieutenant Smith testified that he observed the ICC incident and that Plaintiff "leaned up against the wall with his back up against the wall and was just standing there"; no officer pushed Plaintiff.  Smith Dep. (Ex. 54) at 191-92; Paragraph 150, *supra*.

155.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150, *supra*.  Accordingly, there can be no genuine dispute that JDL sympathizer Jim Nutting testified that he did not see the officers push or grab Plaintiff at the ICC.  *See id*; Nutting Dep. (Ex. 2) at 223.

156.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150, *supra*.  To the contrary, Plaintiff indisputably testified that he was advised that he was not under arrest and that he continued to insist that he be allowed to the enter the ICC in order to use the bathroom.  *Id*. ("[Plaintiff] asked

if he was being arrested, in which they responded with a 'no.'"; Ex. 1 (Maniaci Dep.) at 298 ("I told him, well, if I'm not under arrest, I'm going to the bathroom.").

157.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact or supporting his assertion that "much time had passed" before he was permitted to use the bathroom is false.  Rather, MPD Lieutenant Smith, a JDL sympathizer, testified that Plaintiff was permitted to use the bathroom at most, "[m]aybe two or three minutes.  It wasn't long at all."  Def. Ex. 54 (Smith Dep.) at 193; *see also* Def. Ex. 29 (Finberg Dep.) at 150 (He wanted to go to the bathroom, and they let him.").  Furthermore, Safety Officers did not hold the door open and watch Plaintiff urinate.  Rather, a safety officer placed his foot in the door holding it ajar because Georgetown officials feared that Plaintiff may attempt to lock himself inside the restroom.  *See* Def. Ex. 8 (Eddy Dep.) at 43-44; Def. Ex. 54 (Smith Dep.) at 193-95.

158.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Indeed, Plaintiff concedes that he was "escorted back to the foyer of the ICC" and that shortly thereafter he was "approached by an officer from the D.C. Metropolitan Police Department in the foyer of the [ICC]" because that "officer had been called by the University to escort [Plaintiff] off of the campus."  Pl. Response Facts ¶ 158. Plaintiff fails to provide any citation to the record supporting his assertion that "Robert Turk and Matt Feinberg [sic] were still helping [Plaintiff] to stand and get around."  *Id*.  Defendants do not dispute that Mr. Harrison testified that Plaintiff "attempted to enter the building and attempted to enter the building in a disruptive manner."  Def. Ex. 6 (Harrison Dep.) at 18.  Defendants similarly do not dispute that Mr. Morrell again advised Plaintiff that "he was being barred from the Conference"  Pl. Response Facts ¶ 158.

159.    Plaintiff admits this paragraph; therefore, no response is required.

160.    Plaintiff purports to deny this paragraph, offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 150, *supra*.

161.    Plaintiff admits this paragraph; therefore, no response is required.

162.    Plaintiff admits this paragraph; therefore, no response is required.

163.    Plaintiff admits this paragraph; therefore, no response is required.

164.    Plaintiff admits this paragraph; therefore, no response is required.

165.    Plaintiff admits this paragraph; therefore, no response is required.

166.    Plaintiff admits this paragraph; therefore, no response is required.

167.    Plaintiff admits this paragraph; therefore, no response is required.

168.    Plaintiff admits this paragraph; therefore, no response is required.

169.    Plaintiff admits this paragraph; therefore, no response is required.

170.    Plaintiff admits this paragraph; therefore, no response is required.

171.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact or supporting the numerous unfounded assertions that he makes in his response.  The portions of Plaintiff's deposition and Dr. Gillern's deposition Plaintiff refers to do not support Plaintiff's assertion that "Mr. Maniac [sic] was told at Walter Reed that he had suffered a concussion, sprain of the right ankle, contusions to the right abdomen, right upper arm, right wrist, and abrasions to the legs."  Pl. Response Facts ¶ 171. Plaintiff's assertion is a gross mischaracterization of the record.

To the contrary, Dr. Gillern simply confirmed that she wrote in her notes, "patient likely with concussion and right ankle -- right ankle sprain" and that she concluded Plaintiff "likely had a concussion."  Def. Ex. 57 (Gillern Dep.) at 45.  Even Plaintiff has testified that "[a]ll I know is the doctor told me that I had a mild concussion, and that's what I was being treated for."  Ex. 1 (Maniaci Dep.) at 324.  Not once in either Plaintiff's deposition or Dr. Gillern's deposition did either witness testify that "Plaintiff was told that he had suffered contusions to the right abdomen, right upper arm, right wrist and abrasions to the legs."  Pl. Response Facts ¶ 171.

Plaintiff fails to provide any specific citation to the record to support his assertion that "According to Dr. Gillern, it is not likely, and there is no indication that Maniaci received the injuries from anything but what he has claimed."  Pl. Response Facts ¶ 158.  This assertion is patently false.

Defendants do not dispute that Plaintiff received a set of discharge instructions which include instructions for patients who have suffered a soft-tissue contusion.  *See* Pl. Ex. 12 at M000077.  However, there is no medical or other record evidence indicating that these instructions were given to Plaintiff for anything other than his sprained ankle.  *See* Pl. Ex. 15 at 62.  Indeed, Dr. Gillern's physical examination of Plaintiff revealed no head injuries, no back tenderness, no ankle pain, and no bruising and she noted that Plaintiff did not appear to be "suffering or in a lot of pain."  Def. Ex. 57 (Gillern Dep.) at 33-36, 45-48, 53-54.  Furthermore, neither the word "contusion" nor "bruise" appears anywhere in her treatment notes.  *See* Pl. Ex. 12 at M000074.

Finally, Plaintiff's self-serving testimony that he does not bruise easily is not supported by any medical evidence or by Dr. Gillern's testimony.  Dr. Gillern's testimony was limited to whether Plaintiff suffered from any medical condition that would place him at a higher medical

47

risk of bruising than others without the condition.  *See* Pl. Ex. 15 at 74 ("nothing that [Plaintiff] has makes him at a higher risk of being a big bruiser").

172.    Plaintiff admits this paragraph; therefore, no response is required.

173.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Defendants do not dispute that Dr. Gillern testified that she concluded that Plaintiff likely had a concussion.  Gillern Dep. (Ex. 57) at 45. Defendants also do not dispute that Dr. Gillern testified that "there's no specific test for concussion, it's just kind of based on history and -- yeah."  *Id*.

174.    Plaintiff admits this paragraph; therefore, no response is required.

175.    Plaintiff admits this paragraph; therefore, no response is required.

176.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  *See* Paragraphs 96 through 116.

177.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  *See* Paragraphs 96 through 116.

178.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  *See* Paragraph 114, *supra*.

179.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  *See* Paragraph 114, *supra*.

180.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  *See* Paragraphs 116, 119 and 122, *supra*.

181.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  *See* Paragraphs 119, 125-26, *supra*.

182.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  *See* Paragraph 128, *supra*.

183.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff has not produced and Defendants are not aware of any video recordings in the record that address Defendants' assertion that Plaintiff disobeyed Vice President of University Safety, David Morrell's instruction to leave the Conference.  *See* also Paragraphs 143-44, *supra*.

184.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff has not produced and Defendants are not aware of any video recordings in the record that address Defendants' assertion that Plaintiff ignored Director of Public Safety, Darryl Harrison's warning that Plaintiff would not be permitted to enter the ICC.  *See* also Paragraphs 149-50, *supra*.

185.    Plaintiff admits this paragraph; therefore, no response is required.

186.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact or to support his assertion that "[t]he meaning of escort is to accompany another person."  Indeed, Plaintiff concedes that Mr. Olson stated "Sir, you do not have the opportunity to speak any longer.  I would like to ask our staff to escort this gentleman from the room.").  Pl. Response Facts ¶ 116.  Moreover, Plaintiff's Exhibits 5 and 6 support Defendant's point that the Safety Officers first attempted to **escort** Plaintiff from the room and only lifted him out of his seat when he refused to leave on his own.

49

Mr. Eddy reported that "When I reached the seat of the [Plaintiff], I lean over and in a professional tone stated, 'Sir, I afraid your going to have to come with me.' The gentleman look at me and stated, 'I'm not going anywhere.' [B]y this time Officer Sall[e]y had reached the seat and was positioned behind the gentleman. I then stated 'Sir, as a university official, I'm going to have to have to ask you to come with me.' The gentleman once again looked at me and stated, 'I'm not getting up out of this seat.' At that point, I placed my hands under his right arm put and I motioned for Officer Salley to secure[] him under his left arm pit." Pl. Ex. 6 at GTN001724. Similarly, Mr. Salley reported that, "[Plaintiff] was sitting down and was refusing to get up. After several warnings from [Officer] Eddy he still refused to leave. At that point, [Officer] Eddy motioned to me to secure the individual under his left arm and we both raised him from his seat." Pl. Ex. 5 at GTN001722.

Finally, Plaintiff fails to provide any citation to the record supporting his assertion that Mr. Olson "had the authority to instruct and supervise the officers and he used such authority." The portions of Mr. Olson's deposition transcript that Plaintiff cites do not support his assertion. To the contrary, Mr. Olson unequivocally testified that after he requested the Safety Officers to escort Plaintiff from the room, authority to further instruct or supervise the officers was vested in members of the Department of Public Safety.

> Q      Once you had instructed the Georgetown security to remove Mr. Maniaci, were the security people, then, under Mr. Morrell's tutelage, let's say, and instruction? In other words, once you asked them to remove him, would any further instruction to them have to come from Mr. Morrell?
>
> MR. JONES:  Object to form. You can answer, if you can.
>
> THE WITNESS:  It would come from supervisory personnel in that area of the university. Maybe Mr. Morrell, maybe other people that report to him.

Def. Ex. 5 (Olson Dep.) at 46-47.

Defendants do not dispute that Mr. Olson testified that "[i]t appeared to me from what I saw that the officers acted professionally and reasonably." *Id*. at 49.

187.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact. Accordingly, Mr. Olson's sworn declaration and deposition testimony stand unrebutted. Defendants do not dispute that the Speech and Expression Policy recognizes that "'free speech' is central to the life of the university" and states that "obstructing the free exchange of ideas is an attack on the core principles the University lives by." Def. Ex. 24 (Speech and Expression Policy) at M000216-17.

188.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. Indeed, Plaintiff concedes that Mr. Olson "did not specify at that moment that he wanted the officers to use excessive force, hit, or strike the Plaintiff." Pl. Response Facts ¶ 188.

189.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertions that "this happened in the doorway of the ICC building" and that "after they had trapped Plaintiff in the doorway and held him against his will. Mr. Olson and Mr. Morrell did not allow the Plaintiff to move." Pl. Response Facts ¶ 189. Accordingly Mr. Olson's deposition testimony stands unrebutted.

190.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial. The portion of Mr. Olson's deposition transcript that Plaintiff cites does not address whether Mr. Olson had the authority to unilaterally deviate from or change Georgetown's existing Speech and Expression policy. *See* Pl. Ex. 21 at 6. Accordingly, Mr. Olson's sworn declaration stands unrebutted. Defendants do not dispute that at all relevant times Mr. Olson was the Vice President of Student Affairs for Georgetown.

51

191.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  The portion of Mr. Olson's deposition transcript that Plaintiff cites does not address whether Mr. Olson had the authority to make final policy for Georgetown relating to the use of only reasonable force.  *See* Pl. Ex. 21 at 6.  Accordingly, Mr. Olson's sworn declaration stands unrebutted.  Defendants do not dispute that at all relevant times Mr. Olson was the Vice President of Student Affairs for Georgetown.

192.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  The portion of Plaintiff's deposition transcript that Plaintiff cites does not address whether Mr. Harrison informed Plaintiff of the procedures Georgetown had put in place to accommodate protestors such as the location of the protest and demonstration areas.  *See* Pl. Ex. 14 at 187-89.

Mr. Harrison unequivocally testified that "the general nature of our conversation was the fact that [Plaintiff] would be attending, and he -- he indicated that he would be attending to protest.  And he was gathering information from me on procedures that we had in place for protestors and that's what we discussed . . . our conversations were mainly centered around the protest and demonstration areas."  Def. Ex. 6 (Harrison Dep.) at 10-12.  Accordingly there can be no genuine dispute that prior to the Conference, Mr. Harrison provided Plaintiff with information regarding the procedures that Georgetown had put into place to accommodate protestors.  Defendants do not dispute that Mr. Harrison did not send written materials regarding the protest and demonstration areas to Plaintiff.

193.    Plaintiff admits this paragraph; therefore, no response is required.

194.     Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  *See* Paragraph 149, *supra*.  Accordingly, there is no genuine dispute that Mr. Harrison walked with Plaintiff over to the ICC and that he did not observe any reports of use of force against Plaintiff at the ICC.  *See* Def. Ex. 6 (Harrison Dep.) at 17-18, 45-46.

195.     Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Accordingly, Mr. Harrison's sworn declaration stands unrebutted.  Defendants do not dispute that Mr. Harrison testified that he has "responsibility  . . . to **assist** in developing those programs that ensure the public safety of our students, faculty, and staff."  Def. Ex. 6 (Harrison Dep.) at 7 (emphasis added).

196.     Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Accordingly, Mr. Harrison's sworn declaration stands unrebutted.  *See also* Paragraph 195, *supra*.

197.     Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial or supporting his assertion that "it is unclear from Mr. Morell's deposition where he was located at any particular time."  In any event, Plaintiff concedes that "[a]t some point [Mr. Morrell] was in the back of Gaston Hall."  Pl. Response Facts ¶ 198.

198.     Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial or supporting his assertions that "he had the power to do so" and "Mr. Olson directly instructed Eddy and Salley."  Moreover, these assertions are not responsive to Defendants' assertion that **Mr. Morrell** did not direct or instruct the conduct of Officer Eddy or Officer Salley in Gaston Hall.  Defendants do not dispute that Mr. Morrell had the authority to

direct the actions of Georgetown's safety officers in some respects.  Defendants also do not
dispute that Mr. Olson directed the Safety Officers to escort Plaintiff from the room.

199.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to
create a genuine issue as to a material fact.  Indeed, Plaintiff's response concedes that Mr.
Morrell did have a conversation with Plaintiff in front of the ICC.  *See* Pl. Response Facts ¶ 199.
In reality, Plaintiff merely quibbles with Defendants' use of the words "brief conversation."
These are precisely the words that Mr. Morrell used during his deposition.

>      A  I don't recall the exact words.  We – we had what might be termed a very
>      **brief conversation** in front of the -- in the ICC building, a building on campus.

Def. Ex. 7 (Morrell Dep.) at 13 (emphasis added).

200.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record
supporting his denial.  Accordingly, Mr. Olson's declaration stands unrebutted.  Plaintiff had
every opportunity to seek discovery on this point and cannot disavow the consequences of his
failure to do so.

201.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record
supporting his denial.  Accordingly, Mr. Harrison's sworn declaration stands unrebutted.
Plaintiff's assertion that "The Georgetown University Police acted under Mr. Morrell's
command" is not responsive to Defendants' assertion that Mr. Morrell did not have the authority
to deviate from or change Georgetown's policy requiring only the use of reasonable force to
authorize the use of excessive force.  Moreover, the cited portions of Mr. Morrell's deposition
transcript do not address whether anyone "acted under Mr. Morrell's command."  Pl. Response
Facts ¶ 201.

202.    Plaintiff purports to deny this paragraph, yet fails to offer any evidence sufficient to create a genuine issue as to a material fact.  Indeed he concedes that "other witnesses, including Mr. Olson, indicated that Mr. Olson gave the instruction" to Officer Eddy to approach Plaintiff. Pl. Response Facts ¶ 202.  Moreover, Officer Eddy clearly testified that "[l]ater on, the gentleman started verbalizing something from his seat.  At that point, Mr. Olson once again informed him that his questions had been addressed, asked him to cease; he did not.  And at that point, he had asked that security remove the gentleman from the hall."  Eddy Dep. (Ex. 8) at 21.

203.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Indeed, his assertion that "he complied with all instructions he heard Officer Eddy set forth" is contradicted by his testimony that "he didn't have an opportunity to cooperate."  Def. Ex. 1 (Maniaci Dep.) at 261.  In any event, Plaintiff's testimony on this point fails to create a genuine dispute as it is thoroughly discredited by substantial deposition testimony and video evidence.  *See* Paragraphs 115-122, 125-129, *supra*.

204.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial other than his own self-serving testimony.  Furthermore, the portion of Plaintiff's deposition testimony cited by Plaintiff does not support this assertion.  Plaintiff testified that "Somebody kneed me in the rib cage" yet he does not identify that "somebody" as Mr. Eddy.  Def. Ex. 1 (Maniaci Dep.) at 261.  In any event, Plaintiff's testimony on this point fails to create a genuine dispute as it is thoroughly discredited by the overwhelming weight of the deposition testimony.  *See* Paragraphs 115-122, 125-129, *supra*.

205.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Accordingly, Safety Officer Eddy's deposition testimony stands unrebutted.  Instead Plaintiff quibbles with Defendants' use of the word "interaction."  Plaintiff's

assertion that "interaction" as defined by an unidentified "internet dictionary" does not "match or even approximate the testimony of any witness on the subject" is argument and does not require a response.  Pl. Response Facts ¶ 205.

206.    Plaintiff admits this paragraph; therefore, no response is required.

207.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Accordingly the sworn declaration of Mr. Harrison stands unrebutted.  Plaintiff's assertion that "This is a question of law and not of Georgetown University policy" is argument and does not require a response.  Defendants address the requirements for finding municipal liability in their briefs.  *See* Def. Mem. at 45-49; Def. Reply at 20-23.

208.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Accordingly, Mr. Harrison's sworn declaration stands unrebutted.  Plaintiff had every opportunity to take discovery from Mr. Eddy and Mr. Harrison on this point and cannot disavow the consequences of his failure to do so.

209.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  To the extent that Plaintiff admits that Officer Eddy did not handcuff him, no response is required.  Defendants do not dispute that Officer Eddy lifted Plaintiff under his shoulders and carried him out of Gaston Hall.  Plaintiff's assertion that "Officer Eddy had his arms around Mr. Maniaci's arm which is an arrest" is argument and therefore no response is required.  Defendants address Plaintiff's legal argument in their briefs. *See* Def. Mem. at 20-22; Def. Reply at 10-14.

210.    Plaintiff purports to deny this paragraph, yet fails to provide any specific citation to the record supporting his denial.  Plaintiff's unsupported assertion is refuted by the clear video evidence.  *See* Paragraphs 125-138, supra.

211.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial other than his own self-serving testimony.  Furthermore, the portion of Plaintiff's deposition testimony cited by Plaintiff does not support this assertion.  Plaintiff testified that "Somebody kneed me in the rib cage" yet he does not identify that "somebody" as Mr. Salley.  Def. Ex. 1 (Maniaci Dep.) at 261.  And in any event, Plaintiff's testimony on this point fails to create a genuine dispute as it is thoroughly discredited by substantial deposition testimony.  *See* Paragraphs 115-122, 125-129, *supra*.

212.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Accordingly, the sworn declarations of Mr. Harrison and Mr. Salley stand unrebutted.  Instead, Plaintiff merely asserts that "Officer Salley was missing at the time of his scheduled deposition and the Plaintiff has had no opportunity to" depose him.  Pl. Response ¶ 212.  As explained in Paragraph 16, *supra*, Plaintiff had every opportunity to take discovery from Mr. Salley and cannot disavow the consequences of his failure to do so.

213.    Plaintiff admits this paragraph; therefore, no response is required.

214.    Plaintiff admits this paragraph; therefore, no response is required.

215.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record supporting his denial.  Accordingly Mr. Harrison's sworn declaration stands unrebutted.  Plaintiff's assertion that "This is a question of law and not of Georgetown University policy" is

argument and does not require a response. Defendants address the requirements for finding

municipal liability in their briefs. *See* Def. Mem. at 45-49; Def. Reply at 20-23.

216.    Plaintiff purports to deny this paragraph, yet fails to provide any citation to the record

supporting his denial. Accordingly the sworn declarations of Mr. Harrison and Mr. Salley stand

unrebutted. Instead Plaintiff merely asserts that "there is no testimony relating to this subject."

Pl. Response ¶ 216. As explained in Paragraph 16, *supra*, Plaintiff had every opportunity to take

discovery from Mr. Salley and cannot now disavow the consequences of his failure to do so.


Respectfully submitted,

March 18, 2008                    _____/s/_____.
                                 John J. Buckley, Jr., D.C. Bar No. 925081
                                 Malachi B. Jones, D.C. Bar No. 455555
                                 Richa S. Dasgupta, D.C. Bar No. 500509

                                 WILLIAMS & CONNOLLY LLP
                                 725 Twelfth Street, N.W.
                                 Washington, D.C. 20005
                                 jbuckley@wc.com
                                 (202) 434-5051
                                 (202) 434-5058 (fax)

                                 *Of Counsel:*
                                 Jane E. Genster, D.C. Bar No. 939850
                                 Vice President and General Counsel
                                 Georgetown University
                                 37th & O Streets, NW
                                 Washington, DC 20057
                                 (202) 687-6500
                                 (202) 687-6527 (fax)

                                 *Attorneys for Defendants Georgetown*
                                 *University, David F. Morrell, Darryl K.*
                                 *Harrison, Todd Olson, Roy Eddy and Larry*
                                 *Salley*